THE STATE OF OHIO, APPELLEE, *v.* SOWELL, APPELLANT.

[Cite as State *v.* Sowell (1988), 39 Ohio St. 3d 322.]

(No. 86-1499—Submitted May 3, 1988—Decided November 16, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Christian J. Schaefer* and *John P. Valentine,* for appellee.

*H. Fred Hoefle* and *Raymond T. Faller,* for appellant.

LOCHER, J. We are confronted today by issues concerning the convictions and death sentence of appellant. For the reasons set forth below, we affirm the judgment of the court of appeals and uphold the sentence of death.

I

In his first proposition of law, appellant contends that his death sentence must be set aside because the court of appeals refused to consider his voluntary intoxication at the time of the offense to be a mitigating factor.

The trial court considered appellant's intoxication and drug use as factors relevant to the issue of whether appellant should receive the death sentence, but gave these factors little weight since appellant presented no evidence of intoxication or drug use at the sentencing hearing.

The court of appeals held that voluntary intoxication is not a mitigating factor because it does not constitute a valid defense in this state. Judge Shannon, concurring separately, found that voluntary intoxication should be considered a relevant mitigating factor, but that in view of the majority's conclusion that appellant purposely and intentionally killed Graham, the factor should be given little weight.

R.C. 2929.04(B) contains a nonexclusive list of mitigating factors to be weighed against the aggravating circumstance(s) in capital cases. Of these enumerated factors, a defendant's voluntary intoxication would most logically be categorized under R.C. 2929.04 (B)(7), which requires the sentencing body to consider "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death." In this regard, we note that R.C. 2929.04(C) provides, in relevant part, that "[t]he defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death. * * *"

These statutory provisions are in conformity with the pronouncements of the United States Supreme Court on the subject. In *Lockett* v. *Ohio* (1978), 438 U.S. 586, 604, the court held that "* * * the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Emphasis *sic.*) The court reiterated this holding in *Eddings* v. *Oklahoma* (1982), 455 U.S. 104, 113-114, stating that "[j]ust as the State may not by statute preclude the

sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence. * * *'' (Emphasis *sic*.) See, also, *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 189, 15 OBR 311, 332, 473 N.E. 2d 264, 288.

Paragraph two of the syllabus in *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383, reads as follows:

"While R.C. 2929.04(B)(7) evinces the legislature's intent that a defendant in a capital case be given wide latitude to introduce any evidence the defendant considers to be mitigating, this does not mean that the court is necessarily required to accept as mitigating everything offered by the defendant and admitted. The fact that an item of evidence is admissible under R.C. 2929.04(B)(7) does not automatically mean that it must be given any weight."

Thus, if a defendant wishes to introduce evidence in support of the existence of a mitigating factor, such evidence must be considered in the weighing process if it is admissible. However, "* * * the jury, or the court in its own independent weighing process, may properly choose to assign absolutely no weight to this evidence if it considers it to be non-mitigating." *State* v. *Steffen, supra,* at 129, 31 OBR at 289, 509 N.E. 2d at 399.

Appellant contends that the voluntary intoxication of a defendant at the time of the offense may be considered a mitigating circumstance. We agree. "Mitigating circumstances" are defined as "those which 'do not constitute a justification or excuse of the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability. * * *' " *State* v. *Steffen, supra,* at 128, 31 OBR at 288, 509 N.E. 2d at 398, fn. 18, citing

Black's Law Dictionary (5 Ed. 1979) 903. Generally, however, "[o]nly that evidence which lessens the moral culpability of the offender or diminishes the appropriateness of death as the penalty can truly be considered mitigating." *Id.* at 129, 31 OBR at 289, 509 N.E. 2d at 399.

As was correctly pointed out by the court of appeals, voluntary intoxication is not a valid defense to a crime in this state, *Long* v. *State* (1923), 109 Ohio St. 77, 141 N.E. 691, although it is relevant to show that the defendant was incapable of forming the requisite specific intent. *State* v. *Fox* (1981), 68 Ohio St. 2d 53, 22 O.O. 3d 259, 428 N.E. 2d 410, syllabus. Nevertheless, voluntary intoxication may be considered to be a mitigating factor where it either lessens the moral culpability of a defendant for an offense or renders the death sentence less appropriate in a given case. The diminished capacity of intoxicated persons to appreciate the wrongfulness of their conduct, and to refrain from such conduct, may well be a relevant consideration in determining the degree of punishment to be inflicted upon them when such conduct is unlawful. See, *e.g., State* v. *Staten* (1969), 18 Ohio St. 2d 13, 20, 47 O.O. 2d 82, 86, 247 N.E. 2d 293, 298; *Pigman* v. *State* (1846), 14 Ohio 555. Indeed, this court has previously considered the intoxication of a defendant as a mitigating factor in *State* v. *Bedford* (1988), 39 Ohio St. 3d 122, 132-133, 529 N.E. 2d 913, 924; and in *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 93, 512 N.E. 2d 611, 625. Furthermore, this court has considered the history of alcoholism of the defendants in such capital cases as *State* v. *Henderson* (1988), 39 Ohio St. 3d 24, 33-34, 528 N.E. 2d 1237, 1247; *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 261-263, 513 N.E. 2d 267, 277; *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 187, 17 OBR 414, 426, 478 N.E. 2d 984,

996; and *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 244-245, 15 OBR 379, 383-384, 473 N.E. 2d 768, 776.

Consequently, we hold that the court of appeals erred when it refused to consider appellant's voluntary intoxication as a mitigating factor. However, we conclude that this error was not prejudicial to appellant. Our consideration, upon independent review of the record, of appellant's alleged intoxication at the time of the offense as a mitigating factor renders the error harmless. See *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 263, 527 N.E. 2d 844, 856; *State* v. *Maurer, supra,* at 247, 15 OBR at 386, 473 N.E. 2d at 778; *State* v. *Jenkins, supra,* at 199-200, 15 OBR at 341, 473 N.E. 2d at 296. The weight we assign to this mitigating factor is discussed *infra.*

Since the court of appeals' error does not require appellant's death sentence to be set aside, we reject appellant's first proposition of law.

## II

In appellant's second proposition of law, he claims that his death sentence is defective because the court of appeals failed to unanimously find, under the procedures mandated by R.C. 2929.05, that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt and that the death sentence is appropriate. We disagree.

Two of the three judges on the court of appeals panel held on independent review that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt and that the death sentence is appropriate. The dissenting judge concluded that the aggravating circumstance did not outweigh the mitigating factors beyond a reasonable doubt and that the death sentence was inappropriate in this case.

While R.C. 2929.03(D)(3) requires that a three-judge panel at the trial level reach a unanimous decision before a sentence of death may be imposed, R.C. 2929.05(A) does not require unanimity by reviewing courts conducting independent review of the death sentence. R.C. 2929.03(D)(3) provides in part:

"Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or *if the panel of three judges unanimously finds,* that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. * * *" (Emphasis added.)

R.C. 2929.05(A) provides in pertinent part:

"* * * The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate. * * * The court of appeals or the supreme court shall affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circum-

stances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case. * * *"

The General Assembly chose to use the term "unanimously" in R.C. 2929.03(A)(3) and could have required similar unanimity from the court of appeals and this court on independent review if it had intended such result. Obviously it did not.

We also fail to find any merit in appellant's contention that a less than unanimous decision by a reviewing court in such matters produces an unconstitutional determination. Section 3(B)(3), Article IV of the Ohio Constitution, dealing with courts of appeals, provides:

"*A majority of the judges hearing the cause shall be necessary to render a judgment.* Judgments of the courts of appeals are final except as provided in section 2(B)(2) of this article. No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." (Emphasis added.)

Furthermore, we disagree that lack of unanimity on independent review violates the Eighth Amendment to the United States Constitution by impermissibly reducing the constitutionally required reliability of the court's determination that death is the appropriate penalty. A determination, by a majority of judges on the court of appeals, that the aggravating circumstances outweigh the mitigating factors and that the death sentence is appropriate is clearly required under Ohio's statutory framework for imposition of capital punishment. Also, the court of appeals and this court must specifically articulate the reasons why the aggravating circumstances outweigh the mitigating factors as well as why the death sentence is appropriate. See *State* v. *Maurer, supra,* at paragraph four of the syllabus. Such a requirement clearly prevents any arbitrary or capricious action by a reviewing court in affirming the sentence on independent review.

For these reasons, we now hold that upon independent review of a sentence of death, a determination by a majority of the members of the reviewing court that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors beyond a reasonable doubt and that the death sentence is appropriate is sufficient to affirm the sentence of death. Unanimity is not required.

Accordingly, we reject appellant's second proposition of law.

## III

In his third proposition of law, appellant contends that the trial court erred in considering victim impact evidence in its sentencing determination. The presentence investigation report in this case contained a victim impact statement. Essentially, appellant maintains that consideration of such evidence is irrelevant to the sentencing decision and extremely prejudicial.

In *Booth* v. *Maryland* (1987), 482 U.S. ___, 96 L. Ed. 2d 440, 107 S. Ct. 2529, the United States Supreme Court held that the introduction of a victim impact statement during the penalty phase of a capital murder trial violates the Eighth Amendment to the United States Constitution. The court determined that such evidence "* * * is irrelevant to a capital sentencing decision, and that its admission creates a constitutionally unacceptable risk that *the jury* may impose the death penalty in an arbitrary and capricious manner." (Emphasis added.) *Id.* at ___, 96 L. Ed. 2d at 448, 107 S. Ct. at 2533.

Recently, in *State* v. *Post* (1987), 32

Ohio St. 3d 380, 513 N.E. 2d 754, we analyzed the *Booth* decision and examined the admissibility of victim impact evidence in capital sentencing hearings under Ohio law. *Id.* at 382-384, 513 N.E. 2d at 757-759. We concluded that it was error to admit such evidence, but that the error did not warrant reversal in that case. "The risks of arbitrary and prejudicial sentencing which guided the court in *Booth* are not present in the case *sub judice* because this case was before a three-judge panel rather than a jury." *Id.* at 384, 513 N.E. 2d at 759.

The instant case was also tried before a three-judge panel and nothing in the panel's written opinion indicates that it relied upon the victim impact statement in reaching its sentencing determination. No reference was made to the use of such evidence in the weighing process. In *Post,* we followed our decision in *State* v. *White* (1968), 15 Ohio St. 2d 146, 44 O.O. 2d 132, 239 N.E. 2d 65, which held at paragraph two of the syllabus:

"The use by the state of evidence of the victim's background, and reliance upon such evidence in its argument for the death penalty, is improper and constitutes error, but while such error may be cause for reversal because of its prejudicial effect on a jury, it must affirmatively appear that in a bench trial the court relied on such testimony in arriving at its verdict in order for such error to be ground for reversal."

*White* further held that this court indulges "* * * in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *Id.* at 151, 44 O.O. 2d at 136, 239 N.E. 2d at 70.

In light of the fact that the three-judge panel did not affirmatively rely on the victim impact evidence in arriving at its sentencing decision, the admission of such evidence did not constitute prejudicial error. See *Post, supra,* at 384, 513 N.E. 2d at 759.

## IV

The fourth proposition of law claims that the three-judge panel erroneously considered and weighed the following nonstatutory aggravating circumstances against the mitigating factors in arriving at its sentencing determination: (1) the nature and circumstances of the offense; (2) the fact that the offense was committed with prior calculation and design; (3) the presence of a significant prior history of criminal convictions; and (4) the history, character and background of the offender. We do not agree.

The three-judge panel in the case at bar was well aware of the statutory aggravating circumstance involved in this action. In its opinion it states:

"The aggravating circumstance alleged in this case is that set out in section 2929.04(A)(5), O.R.C.: '[T]he offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.'"

Thus, it is clear that the three-judge panel understood the difference between statutory aggravating circumstances and facts describing the nature and circumstances of the offense. See *State* v. *Jester* (1987), 32 Ohio St. 3d 147, 153, 512 N.E. 2d 962, 969.

R.C. 2929.03(F) provides in pertinent part:

"The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04

of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and *the reasons why* the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. * * *" (Emphasis added.)

In a section of its opinion entitled "WEIGHING AGGRAVATING CIRCUMSTANCE AGAINST MITIGATING FACTORS," the trial court specifically addressed why the aggravating circumstance outweighs the mitigating factors. In stating its reasons, the three-judge panel relied heavily upon the nature and circumstances of appellant's offense. The nature and circumstances of the offense described in the opinion support the court's finding that the crime involved purposefulness, which is an element of the aggravating circumstance present in this case. The nature and circumstances cited overwhelmingly prove the existence of the aggravating circumstance contained in R.C. 2929.04(A)(5). There is no indication that the panel viewed the nature and circumstances of the offense as separate aggravating circumstances and weighed them against the mitigating factors. See *State* v. *Davis* (1988), 38 Ohio St. 3d 361, 528 N.E. 2d 925.

Appellant essentially argues that the nature and circumstances of his offense cannot be cited as reasons for a finding that the aggravating circumstance sufficiently outweighs the mitigating factors. This argument is contra to paragraph one of the syllabus of *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, wherein we held:

"Under R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggra-

vating circumstances were sufficient to outweigh the mitigating factors."

Upon thorough examination of the trial court's opinion, we find that the nature and circumstances of the offense (which include the facts indicating that the offense was purposefully committed) were simply utilized to support the trial court's finding that the aggravating circumstance outweighs the mitigating factors. Therefore, we do not agree with appellant's contention that the court was separately weighing these circumstances as aggravating circumstances against the mitigating factors.

We also disagree with appellant's assertion that his history, character and background, including his prior history of criminal convictions, were utilized by the three-judge panel as separate aggravating circumstances and weighed against the mitigating factors. After considering the nature and circumstances of the offense, the three-judge panel stated that "[d]efendant's adult life has been one of intermittent crime, involving numerous prior acts of violence."

A much more substantive analysis of appellant's prior history and background is discussed in the section of the panel's opinion entitled: "MITIGATING FACTORS INDIVIDUALLY CONSIDERED." R.C. 2929.04 (B) allows the sentencing body to weigh against the aggravating circumstances "the history, character, and background of the offender" as well as "[t]he offender's lack of a significant history of prior criminal convictions and delinquency adjudications * * *." See R.C. 2929.04(B)(5). In the above section of its opinion, the three-judge panel clearly indicated that it found no mitigating value in appellant's history and background.

We are convinced that the three-judge panel, by mentioning the prior

history and background of appellant following its discussion of the nature and circumstances of the offense, in essence intended to show support for its finding that the aggravating circumstance was sufficient to outweigh the mitigating factors pursuant to R.C. 2929.03(F). Appellant's prior history and background were not relied upon as a separate aggravating circumstance.

## V

In appellant's fifth proposition of law, he argues that the trial court specifically found that appellant's killing of Calvert Graham was not committed with prior calculation and design and, therefore, appellant should have been acquitted of aggravated murder, since the indictment alleged prior calculation and design. We find this to be an argument of semantics and reject it on a more substantive basis.

R.C. 2903.01(A), in defining "aggravated murder," states:

"No person shall purposely, and with prior calculation and design, cause the death of another."

The trial court specifically found that appellant did not have prior calculation and design to kill Graham, but that he did have such prior calculation and design as to Billups. Both lower courts cite this court's decision in *State v. Solomon* (1981), 66 Ohio St. 2d 214, 20 O.O. 3d 213, 421 N.E. 2d 139, to support the finding that appellant's intent was "transferred" from Billups to Graham and, as a consequence, Graham was killed with prior calculation and design.

In *Solomon*, the defendant and a Charles Glasgow were assisting Glasgow's brother in moving to a new home. Throughout the day, Glasgow and the defendant became involved in heated boxing matches. Charles Glasgow eventually produced a handgun and accidentally wounded another member of the moving party. The defendant appeared with a rifle and shot Glasgow, who fled to the safety of his own apartment. Subsequently, the defendant and another man appeared at the rear door of the Glasgow apartment bearing firearms. The other man entered and Glasgow persuaded him to surrender his weapon. The defendant forced his way into Glasgow's apartment. Glasgow's wife apparently struggled with the defendant in an attempt to block his entry and he shot her in the throat, killing her.

The defendant was indicted for the aggravated murder of Mrs. Glasgow and the attempted murder of Charles Glasgow. A jury found him guilty of both crimes, and the court of appeals affirmed. This court reversed and remanded because of an error in the trial court's charge to the jury, but held:

"As with premeditation, the culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim. Therefore, we hold that if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A)." *Id.* at 218, 20 O.O. 3d at 216, 421 N.E. 2d at 142.

In the cause *sub judice,* appellant had stated his intention to shoot Billups when he left Graham's apartment. After several minutes in his own apartment, the appellant returned and reiterated his intent to shoot Billups. In his attempt to carry out his design, appellant purposely and intentionally killed Graham. The first shot to Graham's midsection was succeeded by the firing of the shot into Graham's forehead. Clearly, Graham's death was the result

of a scheme designed to implement the calculated decision to kill Billups. This action falls squarely within the confines of our holding in *Solomon*. See, also, *Murry* v. *State* (Wyo. 1986), 713 P. 2d 202; *People* v. *Siplinger* (1967), 252 Cal. App. 2d 817, 60 Cal. Rptr. 914, certiorari denied (1967), 390 U.S. 983. Thus, the indictment is accurate in that appellant acted with prior calculation and design in killing Graham under the doctrine of transferred intent.

Furthermore, there is no evidence in the record to show that appellant was misled as to what was alleged. All parties argued at trial as to whether *Solomon* would apply. Appellant was well aware of the state's case against him and how it intended to proceed. Therefore, even assuming error in the indictment, appellant has failed to demonstrate any resulting prejudice.

## VI

Appellant's sixth proposition of law presents the argument that the essential element of prior calculation and design cannot be enlarged to include the slain victim against whom such prior calculation and design was not directed, where the offender shoots both the person killed and the person against whom the prior calculation and design was directed. In other words, appellant seeks to benefit from the fact that he continued to pursue Billups and attempted to kill her after killing Graham. This argument is illogical.

Appellant argues that because he continued on his path to kill Billups, the prior calculation and design could not be transferred to the killing of Graham. As we stated in *State* v. *Solomon, supra,* "* * * the culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual vic-

tim." *Id.* at 218, 20 O.O. 3d at 216, 421 N.E. 2d at 142.

The instant case involved one course of conduct, *i.e.,* the scheme designed to implement the calculated decision to shoot and kill Billups. Graham was killed during this course of conduct. The doctrine of transferred intent is not eliminated by the fact that the defendant proceeds with his scheme and injures his intended victim. See *State* v. *Gandy* (1984), 283 S.C. 571, 324 S.E. 2d 65; *United States* v. *Sampol* (C.A.D.C. 1980), 636 F. 2d 621, 674 ("There are even stronger grounds for applying the principle where the intended victim is killed by the same act that kills the unintended victim."); *State* v. *Hamilton* (1976), 89 N.M. 746, 557 P. 2d 1095. Appellant's sixth proposition of law is rejected.

## VII

The seventh proposition of law maintains that a 1981 amendment to R.C. 2903.01 overrules this court's decision in *State* v. *Solomon, supra,* and the doctrine of transferred intent in Ohio. Appellant refers to R.C. 2903.01 (D), which was added in 1981. (139 Ohio Laws, Part II, 3-4.) That subsection provides:

"No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. In no case shall a jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense listed in division (B) of this section is to be conclusively inferred, because he engaged in a common design with others to commit the offense by force and violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commis-

sion of, attempt to commit, or flight from the commission of or attempt to commit, the offense. If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because he engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all evidence introduced by the prosecution to indicate the person's intent and by the person to indicate his lack of intent in determining whether the person specifically intended to cause the death of the person killed, and that the prosecution must prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt."

Subsection (D) of R.C. 2903.01 deals specifically with subsection (B) of that statute, which defines the offense known as "felony murder." It does not affect R.C. 2903.01(A), which is involved in the case at bar, or our holding in *State* v. *Solomon, supra.* The doctrine of transferred intent is firmly rooted in Ohio law. See *Wareham* v. *State* (1874), 25 Ohio St. 601. Our decision in *State* v. *Solomon* remains good law and we reiterate our holding that if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A).

## VIII

In his eighth proposition of law, appellant begins to argue the evidentiary aspects of this case with regard to prior calculation and design. Appellant contends that if he did have a scheme constituting prior calculation and design, it was "abandoned" after Graham had apparently calmed him down. As the trial court noted, "* * * defendant forced his way into the apartment firing his pistol into the ceiling. Defendant said words to the effect that 'where's that bitch at; I said I'm going to shoot her; I'm going to shoot her.' Defendant continued to accuse Pam Billups of stealing money from him. *Graham managed to calm defendant down a bit.* Defendant started to leave, but then suddenly shot Graham in the stomach, and as Graham fell, again in the head. Defendant then shot Pam Billups three times, put the gun to her forehead and pulled the trigger again. * * *" (Emphasis added.) There is no doubt that appellant purposely killed Graham. It is also clear that reasonable minds could conclude that the appellant acted with prior calculation and design. See *Solomon, supra.*

The term "prior calculation and design" was discussed by this court in *State* v. *Cotton* (1978), 56 Ohio St. 2d 8, 10 O.O. 3d 4, 381 N.E. 2d 190. This term replaced the former requirement of "premeditation and deliberation" when the General Assembly enacted the new Criminal Code in 1974. 134 Ohio Laws, Part II, 1900. In *Cotton,* this court found that "[t]he apparent intention of the General Assembly in employing this phrase [*i.e.,* 'prior calculation and design'] was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill. Thus, instantaneous deliberation

is not sufficient to constitute 'prior calculation and design.' " *Id.* at 11, 10 O.O. 3d at 6, 381 N.E. 2d at 193.

In paragraph three of the syllabus in *Cotton,* this court held:

"Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."

The record reveals that the cause *sub judice* is not an example of instantaneous deliberation. Appellant left Graham's apartment, announcing his intention to get his gun and shoot Billups. He then went to his apartment and instructed Lenora Waugh to get his pistol. After about five or six minutes, appellant, accompanied by Waugh, returned to Graham's apartment. Appellant instructed Waugh to knock on the door and identify herself as a woman named "Portia." Appellant knew that this would cause Graham to open the door. When Graham did open the door, appellant forced his way into the apartment, firing his pistol into the ceiling. Again, appellant announced his intention to shoot Billups. The prior calculation and design was never "abandoned." Appellant was at Graham's apartment for the purpose of shooting Billups and he eventually accomplished that purpose. But for the lack of ammunition, his scheme would have been completed. The gun was placed at Billups' forehead and the trigger was pulled. The evidence demonstrates that appellant never "abandoned" his scheme to kill Billups.

Upon review of the entire record, we hold that the trial court, as trier of fact, was justified in finding the existence of prior calculation and design.

## IX

In his ninth proposition of law, appellant maintains that the evidence establishes no more than the offense of murder or voluntary manslaughter, and that his conviction for aggravated murder must therefore be reversed.

The standard for our review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson* v. *Virginia* (1979), 443 U.S. 307, 318-319. We also must bear in mind that "* * * the weight given to evidence and judgment of the credibility of witnesses are in the province of the * * * [trier of fact]." *State* v. *Martin* (1986), 21 Ohio St. 3d 91, 95, 21 OBR 386, 389, 488 N.E. 2d 166, 169, certiorari denied (1986), 474 U.S. 1073. Furthermore, "[a] reviewing court may not reverse a judgment of conviction where the record shows a verdict based on sufficient evidence." *Id.*

Appellant's contention that insufficient evidence existed to prove prior calculation and design has been rejected above. Appellant also contends that he was provoked into using deadly force and that the evidence could, at best, suffice to convict him of murder or voluntary manslaughter. Appellant testified that he was in a fit of rage because money had been stolen from him while he slept in Graham's apartment. Nothing else in the record clearly indicates that money was stolen from him on the evening in question. Adhering to the principle that the weight given to evidence and judgment of credibility of witnesses are in the province of the trier of fact, and presuming that, in a bench trial in a crim-

inal case, the court considered only the relevant, material, and competent evidence, we find no compelling reason to disagree with the trial court's judgment finding appellant guilty of aggravated murder.

### X

Appellant, in his tenth proposition of law, asserts that the state failed to establish, beyond a reasonable doubt, that the aggravating circumstance outweighed the mitigating factors. Appellant maintains that the considerable evidence he presented in an attempt to prove mitigating factors was certainly sufficient to outweigh or counterbalance the aggravating circumstance.

The "weighing" procedure to be followed by juries and courts under Ohio's statutory framework for imposition of the death penalty is not a mere counting process of the number of aggravating circumstances and the number of mitigating factors. It is a reasoned judgment as to which situations require the death sentence and which situations require life imprisonment, based upon the totality of the evidence presented by both parties.

A review of the instant record reveals that the evidence presented was sufficient for the three-judge panel to form a reasoned judgment that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

We will further address this issue later in this opinion pursuant to our duty to independently weigh the aggravating circumstances against the mitigating factors. See R.C. 2929.05 (A).

### XI

In his eleventh proposition of law, appellant claims that his sentence is defective because the trial court applied an incorrect standard for imposing the death penalty. Appellant cites the following language from the trial court's opinion in support of his position:

"The legislature has guided us to the extent that it has declared that the death penalty must be imposed unless the mitigating factors outweigh the aggravating circumstances." Although this language does express the wrong standard for imposition of the death penalty, we are convinced by a closer examination of the trial court's opinion that it did apply the correct standard under R.C. 2929.03(D) in imposing this sentence.

R.C. 2929.03(D)(3) requires that the panel of three judges unanimously find that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors before a sentence of death may be imposed. Later in its opinion, the trial court stated:

"The sole issue which confronts the Court at this time is stated as follows:

"Did the State of Ohio prove beyond a reasonable doubt that the aggravating circumstances which the defendant, Billy Joe Sowell, was found guilty of committing outweigh the factors in mitigation of the imposition of the sentence of death?"

Finally, the trial court concluded that:

"Upon full, careful and complete scrutiny of all the mitigating factors set forth in the statute or called to the Court's attention by defense counsel in any manner and after considering fully the aggravating circumstances which exist and have been proven beyond a reasonable doubt, the panel unanimously concludes that the aggravating circumstances have been proven by the prosecution beyond a reasonable doubt to outweigh all the mitigating factors advanced by the defendant, as provided in O.R.C. Sec. 2929.03(D)(3)."

A reviewing court must presume

that the trial court applied the law correctly. *State* v. *Coombs* (1985), 18 Ohio St. 3d 123, 125, 18 OBR 153, 155, 480 N.E. 2d 414, 416; *State* v. *Eubank* (1979), 60 Ohio St. 2d 183, 187, 14 O.O. 3d 416, 418, 398 N.E. 2d 567, 570. This principle is violated if a reviewing court isolates a mere description of the law and ignores how that law was actually applied to the case being reviewed. It is true that the trial court incorrectly stated the "weighing" standard when it described the guidance provided by the legislature for imposition of the death sentence. However, it did correctly apply the proper standard to the instant case in reaching its conclusion. Appellant's eleventh proposition of law is rejected.

## XII

In his twelfth proposition of law, appellant contends that the trial court failed to adequately explain in its written opinion why the aggravating circumstance outweighed the mitigating factors.

"The trial court, when it imposes a sentence of death, shall state in a separate opinion its specific findings as to the existence of any mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why these aggravating circumstances were sufficient to outweigh the mitigating factors." *State* v. *Maurer, supra,* paragraph three of the syllabus. Such explanation is required by R.C. 2929.03(F).

After describing the relevant aggravating circumstance, the trial court then enumerated all the mitigating factors of R.C. 2929.04(B) and considered each factor's applicability in light of the evidence presented. The trial court found the factors present to be of minimal mitigating value when compared to the aggravating circumstance, and reached its conclusion based on this comparison. A similar opinion was found to be in compliance with R.C. 2929.03(F) in *State* v. *Beuke* (1988), 38 Ohio St. 3d 29, 36, 526 N.E. 2d 274, 282-283. We hold that the trial court's opinion in the instant case also comports with R.C. 2929.03(F).

## XIII

In his thirteenth proposition of law, appellant contends his sentence is disproportionately severe because ten other persons convicted of aggravated murder in the same county were not capitally prosecuted. This argument has been rejected by this court on numerous occasions. *State* v. *Jenkins, supra,* at 209, 15 OBR at 350, 473 N.E. 2d at 304; *State* v. *Steffen, supra,* at 123-124, 31 OBR at 283-284, 509 N.E. 2d at 394-395; *State* v. *Beuke, supra,* at 37, 526 N.E. 2d at 283. For the reasons set forth in those decisions, we adhere to that position today.

## XIV

In his fourteenth proposition of law, appellant maintains that the proportionality review required of the court of appeals under R.C. 2929.05(A) should include not only cases where the death sentence was sought, but also where the offender was death-eligible. As with the preceding proposition of law, this court has rejected such arguments and continues to adhere to that position. *State* v. *Steffen, supra,* at 123, 124, 31 OBR at 283-284, 509 N.E. 2d at 394-395; *State* v. *Beuke, supra,* at 37, 526 N.E. 2d at 283.

## XV

Appellant's fifteenth proposition of law presents the argument that his right to equal protection was violated by virtue of the fact that the death penalty is most frequently imposed on those who kill whites while those who kill blacks are usually spared. The United States Supreme Court rejected an identical argument in *McCleskey* v.

*Kemp* (1987), 481 U.S. ____, 95 L. Ed. 2d 262, 107 S. Ct. 1756. This court, in light of the *McCleskey* decision, has rejected this claim in *State* v. *Steffen, supra,* at 124-125, 31 OBR at 284-285, 509 N.E. 2d at 395-396; *State* v. *Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585, syllabus; *State* v. *Byrd, supra,* at 86, 512 N.E. 2d at 619; and *State* v. *Beuke, supra,* at 37, 526 N.E. 2d at 283-284.

As in those cases, appellant has failed to offer any evidence that improper racial considerations prompted his death sentence. "Without any evidence that racial bias affected the sentencing process *in his case,* appellant's claim of violation of his right to equal protection must fail." (Emphasis *sic.*) *State* v. *Steffen, supra,* at 125, 31 OBR at 285, 509 N.E. 2d at 396.

## XVI

Appellant's sixteenth proposition of law attacks the constitutionality of Ohio's statutory scheme for imposing the death penalty as violative of the Eighth and Fourteenth Amendments to the United States Constitution and similar provisions of the Ohio Constitution. This argument is comprised of subparts (A) through (G). These precise arguments were raised and rejected in *State* v. *Steffen, supra,* at 125, 31 OBR at 285-286, 509 N.E. 2d at 396; and *State* v. *Beuke, supra,* at 38-39, 526 N.E. 2d at 285.

Appellant maintains in these subparts that the statutory death penalty scheme: (A) serves no rational state interests; (B) is inflicted disproportionately on those who kill whites as compared to those who kill blacks; (C) fails to narrow the class of death eligible offenders, and permits the state to obtain a death sentence upon less proof in a felony murder case than in a case involving prior calculation and design; (D) is impermissibly quasi-mandatory and should require mitigating factors

to be substantially outweighed by aggravating circumstances before death may be imposed; (E) is impermissible because it does not permit juries to extend mercy; (F) together with Crim. R. (11)(C)(3), encourages guilty pleas to avoid death; and (G) fails to provide adequate guidance to the sentencing authority.

We rejected each one of these arguments in *Steffen* and *Beuke, supra,* and we adhere to those decisions today for the same reasons and pursuant to the same authorities cited in those cases.

## XVII

Our next concern is the independent review of the record required of this court by R.C. 2929.05(A), for the purpose of determining whether the mitigating factors present in this case are outweighed by the aggravating circumstance appellant was found guilty of committing. Of the mitigating factors enumerated in R.C. 2929.04(B), only numbers (2) and (7) are applicable under the circumstances of this case.

R.C. 2929.04(B)(2), which requires the sentencing body to consider whether "* * * it is unlikely that the offense would have been committed, but for the fact that the offender was under * * * strong provocation * * *," is relevant because appellant testified that his actions were motivated by the belief that Billups had robbed him. Nevertheless, this factor is entitled to little weight. This alleged provocation cannot be considered as an extenuating circumstance for the murder of Graham, since appellant suspected Billups, not Graham, of the theft.

R.C. 2929.04(B)(7), which directs the sentencer to consider "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death * * *," is relevant in that appellant claims to have been intoxicated at the time of the offense.

However, appellant's claim of intoxication is entitled to little or no weight in this case for two reasons. First, appellant failed to produce any evidence of intoxication during the sentencing hearing. Second, the evidence establishes that appellant possessed the capacity to form a specific intent and to appreciate the wrongfulness of his conduct at the time of the crime. Both courts below found appellant to have been sufficiently clear-minded to commit purposeful action with calculation and design, as evidenced by the fact that appellant purposely tricked Graham into opening the apartment door by having Waugh knock and claim to be someone named "Portia."

In a further attempt at establishing mitigation, appellant offered evidence that he possesses an altruistic nature. In the past, appellant has helped children, prevented crimes, and provided food and money to people in need.

However, taking all the foregoing into account, we have no doubt that the aggravating circumstance appellant was found guilty of committing outweighs the mitigating factors present in this case. Appellant's belief that Billups had robbed him, his alleged intoxication at the time of the crime and his altruistic nature simply do not outweigh the fact that he committed a brutal and senseless murder as part of a course of conduct involving the purposeful killing of one person and the attempt to kill another.

## XVIII

Finally, we turn to a consideration of whether the sentence of death is appropriate in this case, as required by R.C. 2929.05(A). Appellant herein purposely murdered a helpless, wounded friend and was thwarted from killing another wounded person only by a lack of ammunition. Under these circumstances, we find that the sentence of. death in this action is not excessive or inappropriate, and we further find that this sentence is not disproportionate to those imposed in similar cases. See, *e.g., State* v. *Bedford, supra; State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568; *State* v. *Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407.

In accordance with the foregoing, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY and HOLMES, JJ., concur.

DOUGLAS and WRIGHT, JJ., concur in the syllabus and judgment only.

H. BROWN, J., concurs in judgment only.