[Cite as *State v. Hill*, 2016-Ohio-5205.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                         :                    No. 15AP-928
                                                                                    (C.P.C. No. 14CR-861)

v.                                                             :

                                                                                    (REGULAR CALENDAR)

Brian Hill,                                              :

      Defendant-Appellant.                      :

---

D E C I S I O N

Rendered on August 2, 20016

---

**On brief:** *Ron O'Brien,* Prosecuting Attorney and *Seth Gilbert,* for appellee.

**On brief:** *Brian J. Rigg,* for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Brian Hill is appealing from his convictions and related sentences. He assigns four errors for our consideration:

> [I.] The trial court's finding of guilty to the aggravated murder in violation of O.R.C. §2902.02, attempted murder in violation of O.R.C 2903.02, felonious assault in violation of O.R.C. §2903.11, tampering with evidence in violation of O.R.C. §2921.12 and weapon under disability in violation of O.R.C. §2923.13 is against the sufficiency and manifest weight of the evidence.
>
> a. There was insufficient evidence to support a flight instruction to be provided to the jury.
>
> [II.] The trial court erred by admitting exhibits D101 through D104 into evidence as they violated rule 901 of the Ohio Rules of Evidence.

[III.] The trial court erred by admitting exhibit E7, two bags of suspected drugs, into evidence because there was no proper basis for their admittance, it was prejudicial, and irrelevant.

[IV.] The trial court erred by not allowing the appellant to question a witness of his weapons under disability charge and his gross sexual imposition conviction.

{¶ 2} To address the first assignment of error, we must review the testimony presented at trial.

{¶ 3} The evidence showed that Hill shot several times at two occupants of another motor vehicle. One of the occupants was struck by a bullet in the head and died. The other was unharmed.

{¶ 4} As this cursory review of the evidence shows, Hill was guilty of murder and felonious assault. Based on his prior record, he was also guilty of having a weapon under disability. Also, based on his prior record he was to be sentenced on a repeat violent offender specification.

{¶ 5} The other offenses charged were attempted murder, tampering with evidence, and aggravated murder. The tampering with evidence charge was based on Hill's hiding the gun used in the attack immediately after the shooting. This qualifies as tampering with evidence as defined by R.C. 2921.12, which reads:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

(B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree.

{¶ 6}   Hill shot at the occupants of the other vehicle, a truck, several times. A jury could reasonably infer that Hill was trying to kill the occupants of the truck, making him guilty of attempted murder.

{¶ 7}   The remaining charge, which is the most difficult to resolve, is the charge of aggravated murder. In the context of this case, the distinguishing factor between aggravated murder and murder is the fact that for a murder to become an aggravated murder, the killing must have been done with prior calculation and design.

{¶ 8}   When the Ohio Legislation re-wrote the Ohio Criminal Code in the 1970's, it attempted to get away from instantaneous "prior calculation and design." The legislative history indicates that prior calculation and design should involve some deliberation, not quick reaction to a situation.

{¶ 9}   The driver of the truck in which Hill was riding was Hill's cousin, Terry Nichols. Nichols told Hill to "shoot the pistol at the truck to scare him," meaning the driver of the truck.  (Tr. Vol. II at 364.)  Hill then shot at the truck and struck not the driver of the truck, but the passenger on the other side of the driver.

{¶ 10} The doctrine of transferred intent then comes into play. If a defendant shoots several times at one person but instead shoots another person, the intent to harm the one person is transferred into an intent to harm the person actually harmed. As a result, Hill's intent to shoot and arguably kill the driver of the truck transfers to the shooting of the passenger. A purpose to kill the one, becomes the purpose to kill the other.

{¶ 11} The doctrine of transferred intent does not extend to a transfer of prior calculation and design. The testimony must establish that Hill had a prior plan or calculation to kill the passenger for Hill to be guilty of aggravated murder of the passenger. The evidence presented at Hill's trial simply does not support such a finding.

{¶ 12} Granting that Hill was carrying a firearm, merely carrying a firearm in what police routinely call a high crime neighborhood does not mean that a person intends to shoot someone else or kill someone else unless in self defense. The evidence at trial indicates that the urging of state's witness Terry Nichols to shoot was what precipitated the shooting, not a prior plan of Hill to shoot either the driver of the truck or the passenger in the truck.

{¶ 13} The evidence does not support a finding that the killing was done as the result of prior calculation and design. To that extent, the first assignment of error is sustained. The finding of guilty as to aggravated murder is vacated, but a guilty finding as to murder as a lesser included offense is left in place.

{¶ 14} Appellate counsel has inserted under the first assignment of error a statement that:

> a. There was insufficient evidence to support a flight instruction to be provided to the jury.

{¶ 15} Technically, this "statement" should be assigned as a separate error.

{¶ 16} Hill and Nichols did not initially flee; instead, they went to a local market to buy beer immediately after Hill shot at the truck repeatedly. However, after the two men became aware of a police helicopter circling in the area, they believed the police were looking for them. They then went to Nichols' home where Hill, according to Lola Nichols, Terry Nichols' mother, ran into the house. Hill then hid the gun he had used in the shooting.

{¶ 17} Some of the police testimony also indicated that Hill "jumped out of the car, ran to his house." (Tr. Vol. II at 373.)

{¶ 18} We cannot find an abuse of discretion by the trial court judge in giving the following charge:

> There has been an assertion of flight during the trial. Flight in and of itself does not raise a presumption of guilt, but unless satisfactorily explained, it might tend to show consciousness of guilt or a guilty connection with the crime. Using your instruction of credibility, you must determine what, if any, value may be placed on such an assertion.

(Tr. Vol. III at 556.)

{¶ 19} The two men, Nichols and Hill, were obviously aware that Hill had just fired several shots at another motor vehicle. This activity after becoming aware of a police helicopter searching the neighborhood could legitimately be construed as hiding themselves from the police. An instruction about flight, after committing a crime, was not inappropriate. The men knew they had committed a crime. The charge did not really

affect the finding of an obvious fact, namely their awareness that they had been involved in criminal activity when Hill shot at the truck.

{¶ 20} This subdivision of the first assignment of error is also overruled. The remainder of the first assignment of error is overruled, except as to the guilt of aggravated murder as explained earlier.

{¶ 21} In the second assignment of error, counsel for appellant argues that certain photographs taken at the home where appellant lived were not properly authenticated. These photographs were 4 of over 100 photographs presented at trial. The testimony at trial indicated that one police officer who testified handed a camera up to another police officer who was in the attic of the house. The murder weapon was photographed in the attic.

{¶ 22} The admission of the four photographs of the attic could not conceivably have affected the outcome of the trial. Therefore, the admission into evidence cannot be considered reversible error. The second assignment of error is overruled.

{¶ 23} The third assignment of error questions the admission into evidence of two bags of what appeared to be a controlled substance which was found at the home where Hill lived.

{¶ 24} The state argues that the admission into evidence of the bag of controlled substance was permissible to show that police thoroughly investigated the case. That argument is less than persuasive.

{¶ 25} The state also submits that a plain error standard should apply because defense counsel at trial did not object to the admission of the exhibits initially, but indicated that the defense had no objection to the admissibility. Later, counsel did object, but the exhibits had already been admitted by them and the jury had seen them.

{¶ 26} We see no relevance of the bags of controlled substances to the homicide prosecution being perused. A timely objection should have resulted in the items being kept from the jury. However, the trial court, having already admitted the exhibits, was not under a duty to "unadmit" the exhibits and tell the jury to forget the testimony it had heard earlier.

{¶ 27} We cannot say the trial court committed reversible error in the way it handled the issues. The third assignment of error overruled.

{¶ 28} The fourth assignment of error submits that the trial court should have permitted defense trial counsel to cross-examine the state's witness, Terry Nichols, about a conviction for gross sexual imposition which was over 20 years old, despite the provisions of Crim.R. 609 which prohibits the admissibility of such aged convictions.

{¶ 29} Appellate counsel argues that Nichols was somehow affected by his old conviction in deciding to enter into a plea bargain, which reduced the major charge against him from aggravated murder with a life sentence to the scheduled felony of involuntary manslaughter with a minimum sentence of 11 years. The substantial reduction in potential prison time was motivation enough for the plea agreement.

{¶ 30} The trial court judge was well within her discretion in abiding by the Ohio Rules of Evidence, specifically Evid.R. 609.

{¶ 31} The fourth assignment of error is overruled.

{¶ 32} In summary, the second, third, and fourth assignments of error are overruled in toto. The first assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part and the case is remanded to the trial court for sentencing for murder as opposed to aggravated murder. The other convictions and sentences are left undisturbed.

*Judgment affirmed in part, reversed in part;*
*case remanded with instructions.*

BRUNNER, J., concurs in part and in judgment.
LUPER SCHUSTER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and concurring in judgment.

{¶ 33}   I concur in the decision of the majority as to the second, third, and fourth assignments of error, but I concur separately as to the first assignment of error.

{¶ 34}   The Supreme Court of Ohio in *State v. Sowell*, 39 Ohio St.3d 322 (1988), examined whether the element of "prior calculation and design" could "transfer" to a non-intended victim through the doctrine of transferred intent.  In *Sowell,* it was argued that R.C. 2903.01(D), then in effect, prohibited a finding of guilt on a conclusive inference that the accused engaged in a common design with others to commit the offense intended to cause the death of any person killed during its commission.  For aggravated murder a jury was required by statute to find that the accused specifically intended to cause the death of

the person killed, and the prosecution was required to prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt. *Sowell* at 331-32. The Supreme Court distinguished the statute (which has since been repealed) and stated:

> Our decision in *State v. Solomon* remains good law and we reiterate our holding that if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A).

*Id.* at 322. This proposition has been affirmed as recently as 2015 in *State v. Dean*, _ Ohio St.3d _, 2015-Ohio-4347, ¶ 136.

{¶ 35} However, the first question must be whether the State proved beyond a reasonable doubt that Hill acted with prior calculation and design. "No bright-line test exists that 'emphatically distinguishes between the presence or absence of "prior calculation and design." ' " *Dean* at ¶ 167, quoting *State v. Taylor*, 78 Ohio St.3d 15, 20 (1997). "Instead, a case-by-case method must be employed in reviewing the evidence." *Dean* at ¶ 167, citing *State v. Goodwin*, 84 Ohio St.3d 331, 344 (1999). Prior calculation and design must be proved beyond a reasonable doubt, before we turn to the legal question of whether, under the law, Hill's intent may transfer to someone other than the intended victim.

{¶ 36} I concur with the majority opinion that the evidence did not support a finding of prior calculation and design that Hill intended to kill anyone. Viewing the evidence in a light most favorable to the prosecution, I cannot find that the evidence permitted the jury to ascribe prior calculation and design to Hill's intent, based on the testimony at trial that Nichols told Hill to "shoot the pistol at the truck to scare him" and the fact that Hill was described as having walked into the house afterward not in a fleeing posture. (Tr. Vol. 2 at 364.) Since the evidence does not support prior calculation and design with respect to the intended "victim" it does not support it through the doctrine of transferred intent to the actual victim.

{¶ 37} Thus I concur with the finding in the majority opinion that, "[t]he evidence does not support a finding that the killing was done as a result of prior calculation and design." (Decision at ¶ 13.) I concur in sustaining that part of the first

assignment of error on sufficiency of the evidence of aggravated murder, vacating the aggravated murder conviction and leaving in place a finding of guilty of murder as a lesser included offense.

LUPER SCHUSTER, J., concurring in part and dissenting in part.

{¶ 38} I concur with the majority that subsection (a) of the first assignment of error and the entirety of the second, third, and fourth assignments of error should be overruled. However, because I would conclude the sufficiency and manifest weight of the evidence supported Hill's conviction for aggravated murder, I would overrule the entirety of the first assignment of error. Accordingly, I respectfully concur in part and dissent in part.

{¶ 39} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* An appellate court determines whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 40} In defining aggravated murder, R.C. 2903.01(A) states "[n]o person shall purposely, and with prior calculation and design, cause the death of another." The majority states in its decision that there was no testimony establishing that Hill had a prior plan or calculation to kill the passenger of the vehicle rather than the driver. However, the Supreme Court of Ohio has repeatedly held that the doctrine of transferred intent encompasses the transfer of prior calculation and design in an aggravated murder case. *State v. Dean*, ___ Ohio St.3d ___, 2015-Ohio-4347, ¶ 136 (stating "[t]he doctrine of transferred intent is firmly rooted in Ohio law," and noting transferred intent applies in aggravated murder cases); *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 171; *State v. Sowell*, 39 Ohio St.3d 322, 331 (1988) (rejecting the defendant's argument that his indictment was defective for alleging prior calculation and design where the defendant admitted to having a prior calculation and design to kill one person but "[i]n his attempt to carry out his design, [the defendant] purposely and intentionally killed" a different person). Specifically, the Supreme Court has stated:

> "As with premeditation, the culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim. Therefore, we hold that if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A)."

*Sowell* at 330, quoting *State v. Solomon*, 66 Ohio St.2d 214, 218 (1981). The relevant inquiry here, then, is whether there was sufficient evidence that Hill possessed the prior calculation and design to kill the person he believed to be the driver of the vehicle.

{¶ 41} "Prior calculation and design requires something more than instantaneous deliberation." *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 24, citing *State v. Cotton*, 56 Ohio St.2d 8 (1978), paragraph two of the syllabus. "Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." *Id.*, citing *Cotton* at paragraph three of the syllabus. Because there is no bright-line test to determine whether prior calculation and design are present, a court must consider each case on a case-by-case basis. *Id.*, citing *State v. Taylor*, 78 Ohio St.3d 15 (1997). "[P]rior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley*, 93 Ohio St.3d 253, 264 (2001).

{¶ 42} At trial, Nichols testified that he and Hill are cousins. Nichols testified that he used to live with a woman named Ashley Levally, and that Levally moved into his house because her boyfriend, Kenny Broomfield, would beat her. After Levally moved into his house, Nichols testified that Broomfield would come over to harass Levally and that Broomfield broke one of Nichols' windows. To retaliate, Nichols testified he went over to Broomfield's house and broke one of Broomfield's windows. Nichols said he and Broomfield had an ongoing dispute.

{¶ 43} Nichols testified that on February 11, 2014, he received a text message from Levally indicating that Broomfield and another man showed up at Nichols' house and were bothering her. He said he told Levally to call the police but he was unsure if she did.

When he got home from work that afternoon, Nichols said he went to Hill's house to watch television. Eventually, Nichols said he and Hill got in Nichols' pickup truck and drove to buy more beer. Nichols was driving and Hill was in the passenger seat. While they were out, Nichols testified he drove by his house with Hill still in the pickup truck to check on Nichols' house because Broomfield "usually came at nighttime * * * and destroyed [his] property, you know, busted out windows and stuff like that," and that he also wanted to check on Levally and make sure Broomfield was not bothering her. (Tr. Vol. II at 354.)

{¶ 44} On their way to Nichols' house, Nichols said they drove past Broomfield's house and saw a red pickup truck pull out of the driveway. Nichols said he assumed Broomfield was in the truck, so he and Hill followed the truck to make sure Broomfield did not "start any trouble." (Tr. Vol. II at 359.) Nichols testified that Hill knew of his ongoing, volatile relationship with Broomfield, saying he had told Hill about it from the first time Broomfield came to his house and broke a window. Additionally, Nichols said he had a further conversation in his pickup truck with Hill about Broomfield as they were following the red pickup truck, and Nichols continued to complain to Hill about the ways in which Broomfield was bothering him.

{¶ 45} Nichols said they followed the red pickup truck closely as it drove past Nichols' house. Nichols said he told Hill that if the red truck stopped in his driveway, Nichols was going to confront the occupants because he was tired of people destroying his property. After that happened, Nichols said Hill pulled out a gun from inside his jacket. When Nichols saw Hill holding the gun, Nichols said he told Hill to shoot at the truck "to scare" Broomfield because he was tired of dealing with Broomfield's harassment. (Aug. 26, 2015 Tr. Vol. II at 364.) Nichols said they followed the red truck to a stop sign, and then when the red truck drove past the stop sign, he again followed until the truck came to a stop a short distance later. Nichols testified he pulled up next to the red truck and Hill fired his weapon into the red truck several times. Patricia Pallenberg, the passenger in the red pickup truck, died as a result of the gunshots.

{¶ 46} Hill did not testify, and Hill argues there was no evidence that he brought the gun with him in Nichols' pickup truck in order to shoot Broomfield if they encountered him. However, "the law has long recognized that intent, lying as it does

within the privacy of a person's own thoughts, is not susceptible of objective proof." *State v. Garner*, 74 Ohio St.3d 49, 60 (1995), citing *State v. Carter*, 72 Ohio St.3d 545, 554 (1995). The trier of fact may consider the entire set of circumstances surrounding the event and infer intent from those facts. *State v. Loughman*, 10th Dist. No. 10AP-636, 2011-Ohio-1893, ¶ 47, citing *State v. Grant*, 67 Ohio St.3d 465, 478 (1993); *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 27 (a jury may infer prior calculation and design).

{¶ 47} Based on Nichols' testimony, the jury could determine that Hill knew of the ongoing dispute between Nichols and Broomfield, that Hill pulled the gun out of his jacket and showed it to Nichols before Nichols ever said anything about shooting into the red pickup truck, and that, even after Nichols told Hill to shoot into the truck as a scare tactic, Nichols and Hill continued to follow the red pickup truck for a short time before coming to a stop, pulling up beside the truck, and Hill firing into the red pickup truck at very close range. Even though a relatively short amount of time passed from the time Hill first brandished the gun to when Nichols pulled up beside the red pickup truck and Hill fired the gun, I would conclude there was "the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill." *Carson* at ¶ 24.

{¶ 48} Construing the evidence in a light most favorable to the prosecution, as we must, I would find that there is sufficient evidence to support the jury's finding that Hill had the prior calculation and design to kill Broomfield, whom Hill believed to be inside the red pickup truck, and, based on the doctrine of transferred intent, that prior calculation and design transferred to Hill's purposeful killing of Pallenberg, the actual victim. *See State v. Palmer*, 80 Ohio St.3d 543, 569 (1997) (finding sufficient evidence for prior calculation and design where two vehicles were in an accident, the occupants engaged in a short argument, the defendant got out of his vehicle with a loaded gun in his hand, approached and then shot the victim, concluding that evidence "was more than sufficient to show that appellant had adopted a plan to kill [the victim] prior to exiting [the] vehicle and that, with a level of precision, appellant followed through on his calculated decision to kill"); *State v. Taylor*, 78 Ohio St.3d 15, 22 (1997) (upholding a

jury's finding of prior calculation and design where "only two or three minutes" elapsed between a fight at a jukebox and the shooting because, given the strained relationship between the defendant and the victim, "there was more than sufficient evidence for the jury to reasonably have found that [the defendant], with prior calculation and design, decided to shoot [the victim] in that space of time," and noting that "[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves").

{¶ 49} Similarly, I would also conclude that the aggravated murder verdict is not against the manifest weight of the evidence. The basis for Hill's manifest weight argument is that Nichols' testimony lacks credibility. However, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the state's version of events over the defendant's version. *State v. Scott*, 10th Dist. No. 10AP-174, 2010-Ohio-5869, ¶ 16. Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Considering all of the evidence at trial, nothing in the record indicates that the jury clearly lost its way in assessing Nichols' credibility or in evaluating the rest of the evidence, and there is no indication of any miscarriage of justice. *Thompkins* at 387 (noting an appellate court, in considering a manifest weight challenge, must determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered"). Thus, I would overrule Hill's first assignment of error in its entirety.

{¶ 50} Accordingly, although I concur in the majority's opinion overruling Hill's second, third, and fourth assignments of error, I dissent from that portion of the majority opinion sustaining, in part, Hill's first assignment of error.

_____