[Cite as *State v. Guerra*, 2013-Ohio-5367.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    12CA010188 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANGEL M. GUERRA | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.    11CR083281 |

DECISION AND JOURNAL ENTRY

Dated: December 9, 2013

CARR, Judge.

{¶1}    Appellant, Angel Guerra, appeals his conviction for aggravated murder. This Court affirms.

I.

{¶2}    Guerra and Richard Alvarado intercepted Moises Velez and several of his acquaintances outside Southerner's Bar in Lorain. When Velez's companions saw that the two men had guns, they jumped into a car to leave the area. Although they urged Velez to do the same, he stayed behind and urged Guerra and Alvarado to put their weapons away. Instead, Guerra shot Velez in the forehead at close range. Velez fell to the ground and died within minutes as a result of his injuries. Guerra and Alvarado fled through a nearby alley.

{¶3}    Guerra was arrested after Velez's companions identified him as one of the gunmen. During Guerra's trial, several of Velez's friends described two other occasions that resulted in altercations between Guerra and their circle of family and acquaintances, including

Velez. Guerra objected to this testimony as improper evidence of other acts under Evid.R. 404(B). A jury found Guerra guilty of aggravated murder in violation of R.C. 2903.01(A), murder in violation of R.C. 2903.02(A) and (B), and felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2), along with accompanying firearm specifications. The trial court found him guilty of having weapons while under disability in violation of R.C. 2923.13(A)(2). The trial court merged the murder and felonious assault convictions with the conviction for aggravated murder and sentenced Guerra to life in prison without the possibility of parole with a concurrent twelve-month sentence for having a weapon while under disability. Guerra appealed. His assignments of error are rearranged to facilitate our review.

II.

**ASSIGNMENT OF ERROR I**

MR. GUERRA'S CONVICTION FOR AGGRAVATED MURDER IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶4} Guerra's first assignment of error is that with respect to his conviction for aggravated murder, the State failed to produce sufficient evidence that he acted with prior calculation and design. Guerra's argument is limited: he has not challenged the conclusion that he killed Moises Velez. Instead, he has argued that although some evidence indicated prior calculation and design toward another intended victim, his decision to shoot Velez was made at the spur of the moment.

{¶5} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, at ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is

whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶6} Under R.C. 2903.01(A), no person may "purposely, and with prior calculation and design, cause the death of another[.]" "Prior calculation and design" denotes "sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation" coupled with circumstances that demonstrate "a scheme designed to implement the calculated decision to kill[.]" *State v. Cotton*, 56 Ohio St.2d 8 (1978), paragraph three of the syllabus. There is no bright-line test for determining whether a defendant acted with prior calculation and design, so courts consider the totality of the circumstances in each case, including:

> (1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost instantaneous eruption of events"?

*State v. Taylor*, 78 Ohio St.3d 15, 19 (1978), quoting *State v. Jenkins*, 48 Ohio App.2d 99, 102 (8th Dist.1976). *See also State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 154.

{¶7} When a defendant formulates a plan that constitutes prior calculation and design with respect to an intended victim but purposely kills another person in the course of carrying out the plan, the culpability evidenced by the prior calculation and design is transferred to the actual victim. *State v. Sowell*, 39 Ohio St.3d 322 (1988), paragraph two of the syllabus, following *State v. Solomon*, 66 Ohio St.2d 214 (1981), paragraph one of the syllabus. *See also State v. Stoutmire*, 7th Dist. Mahoning No. 96 CA 186, 2000 WL 652190. Under these circumstances,

evidence of prior calculation and design is sufficient if the trier of fact could reasonably conclude that the defendant acted with prior calculation and design to cause the death of the *intended* victim. *See*, *e.g*., *Sowell* at 333-334.

{¶8} In this case, there is sufficient evidence supporting the conclusion that Guerra purposefully killed Velez while carrying out "a scheme designed to implement the calculated decision to kill" his intended victim, Noel Cruz. At trial, Cruz explained the connections between himself and his family, Guerra, and Velez. He testified that his mother had dated Guerra's brother in the months that preceded the murder. According to Cruz, this led to problems when Guerra started acting disrespectfully toward the family. When Cruz confronted Guerra about his behavior, his response was "hard headed," and the behavior continued. Cruz, along with other witnesses, also described two incidents in June and July 2011 that illustrated the increasing conflict between Guerra and Cruz. Although Guerra has challenged the admission of this testimony as other acts evidence under Evid.R. 404(B), we must consider all of the evidence presented in evaluating the sufficiency of the evidence. *See generally State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 20, citing *Lockhart v. Nelson*, 488 U.S. 33, 40-41 (1988).

{¶9} Cruz testified that in June 2011, he went to a local bar known as Club Copa with his brother, Mariano "Nano" Cruz, a friend named Ernie, or "Angel," and Velez. During the course of the evening, Cruz stepped outside and saw Guerra holding a gun in Nano's face. According to Cruz, Guerra turned away, shot Angel, and left the scene. Gabriel Fernandez, who was also present, provided additional detail. Fernandez testified that he left the bar and found Nano Cruz in an alley arguing with Guerra. According to Fernandez, Guerra was "talking real crazy, just cussing at [Nano] and stuff, and so I just ran up towards him; and that's when he

pulled a gun out on me." Fernandez testified that Guerra "pointed a gun to my head and told me he would blow my head off" before getting in his car and shooting Angel as he drove away.

{¶10} During the weeks that followed, the conflict escalated. Noel Cruz testified that Guerra's conduct "never stopped * * * it got worse." Cruz explained that on several occasions when he, his brother, and their friends were hanging out in a vacant lot, Guerra drove past brandishing a gun or gesturing as if to do so. On July 17, 2011, a second confrontation occurred. On that night, Cruz approached Guerra at Club Copa and asked, "Why did you shoot [Angel]? Why did you have the gun to my brother's head?" When Guerra denied both accusations, Cruz "spit in his face and * * * punched him." Cruz recalled that Velez, who was also present, tried to intervene. Cruz testified that this incident heightened the conflict and that Guerra then drove past him "multiple times daily" and sometimes yelled, "I'm going to get you."

{¶11} A group of men including Rolando "Macho" Ramos was with Velez outside Southerner's on the evening of July 20, 2011. According to each of their accounts, the friends were passing the time in and around Fernandez's car, which was parked on the street in front of the bar. Ramos testified that he saw someone approaching their location from behind the bar, which captured his attention because it was unusual. He warned Velez to turn around as that individual, later identified as Alvarado, approached with a gun drawn. According to Ramos, Alvarado asked Velez "where[] his people" were while Guerra, also with gun drawn, approached from the same direction. Ramos testified that as he and Fernandez "peeled off" in Fernandez's car, he saw Velez with his hands outstretched, "like he's trying to talk to them, like put the gun away" just before he saw Velez fall to the ground.

{¶12} Fernandez also testified about his recollection of the events. He recalled that he was sitting on the trunk of his car when he saw Alvarado and Guerra approach from the back of

the bar. As he got into the car, he heard Velez tell Alvarado to put his gun away and heard Guerra say, "No, no I want them. Where they at? I know they was here." Fernandez drove away when he saw Guerra looking toward the car, frightened that he was looking for him because of Guerra's previous threat. Fernandez testified that he saw Velez fall to the ground as he looked over his shoulder while driving away.

{¶13} Alvarado also testified about the events that led up to the murder. According to his testimony, Guerra threatened that he was "going to get" Cruz and his friends after the second incident at Club Copa. Alvarado testified that he and Guerra armed themselves with guns owned by Guerra that Alvarado loaded three days before the murder. On July 20th, they circled the block where Cruz and his friends were two or three times, and "we was talking about shooting at the time, but we didn't do it. You know, we just left it alone for the time being" because "too many people [were] out there." According to Alvarado, they returned later to "go up to the bar and look for Noel [Cruz]. We was going to shoot him, but we never found Noel because Noel was never there." Chillingly, Alvarado testified that "[w]e wasn't looking for Mo [Velez]. * * * [I]t was his friend who was supposed to die."

{¶14} The evidence at trial is sufficient to lead the jury to reasonably conclude that Guerra shot Velez under circumstances demonstrating a scheme designed to implement his calculated decision to kill Noel Cruz. Guerra and Cruz knew each other and, by virtue of the relationship between Cruz's mother and Guerra's brother, their own relationship was increasingly strained. The course of events during June and July demonstrates increasing animosity between the two men and between Guerra and Cruz's family and circle of friends. According to Gabriel Fernandez, Guerra threatened to "blow [his] head off." Cruz recalled repeated threats and threatening gestures from Guerra. The evidence demonstrates that Guerra

and Alvarado armed themselves with loaded guns three days before the shooting and drove around the general location several times, aborting their plans once only because too many people were in the area. Alvarado testified that the two men regrouped, then returned to Southerner's with the intention of killing Cruz.

{¶15} Because the evidence is sufficient to demonstrate that Guerra acted with prior calculation and design to kill Noel Cruz, it is also sufficient to support his conviction for the aggravated murder of Moises Velez with prior calculation and design. *See Sowell*, 39 Ohio St.3d 322 at paragraph two of the syllabus, following *Solomon*, 66 Ohio St.2d 214 at paragraph one of the syllabus. Guerra's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE COURT IMPROPERLY ALLOWED TESTIMONY REGARDING OTHER CRIMES, WRONGS OR ACTS OF MR. GUERRA, WHICH UNFAIRLY PREJUDICED MR. GUERRA, THUS DENYING HIM OF HIS RIGHT TO A FAIR TRIAL, AND IN VIOLATION OF OHIO LAW.

{¶16} In his third assignment of error, Guerra has argued that the trial court erred by admitting testimony related to the two confrontations involving Guerra and Noel and Mano Cruz at Club Copa. He has argued that this testimony was not relevant and admissible as other acts evidence under Evid.R. 404(B) and, even if it was, that it should have been excluded nonetheless under Evid.R. 403(A). We disagree.

{¶17} Under Evid.R. 404(B), evidence of other crimes, wrongs, or acts of the defendant is not admissible to prove that the defendant acted in conformity with the character demonstrated by the other acts, but other acts evidence may be admissible for different purposes. The Rule specifies, for example, that other acts evidence may be admitted for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident." Evid.R. 404(B). This list is non-exclusive. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 18. The admission of other acts evidence is a three-step process:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*State v. Williams*, 134 Ohio St.3d 521, 526, 2012-Ohio-5695, ¶ 20.

{¶18} When an appellant challenges the admission of other acts evidence, we review the trial court's decision for an abuse of discretion. *Morris* at syllabus. Under this "deferential" standard, "[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Id*. at ¶ 14. Instead, we consider whether the trial court's decision lacked "a sound reasoning process." *Id*., quoting *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶19} In this case, the testimony related to the June 12, 2011, and July 17, 2011, incidents at Club Copa demonstrates the increasing hostility between the Cruz brothers and their friends and Guerra. The testimony provides a full picture of the context for the shooting of Moises Velez by filling in the details surrounding the parties' acrimonious relationship and Guerra's threatening behavior in the weeks leading up to the murder. In other words, the other acts evidence is relevant and fits solidly into the category of evidence tending to demonstrate, at a minimum, motive and intent.

{¶20} Guerra also argues that the trial court erred by failing to exclude the evidence pursuant to Evid.R. 403(A), which provides that otherwise relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The trial court, however, has broad discretion to determine whether relevant evidence must be excluded in accordance with Evid.R. 403(A) because "the exclusion of *relevant* evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place." (Emphasis in original.) *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 40.

{¶21} Guerra has argued that the risk of unfair prejudice substantially outweighed any potential probative value of the other acts testimony because, in his words, "[t]he State had a problem in this case wherein the witnesses testified that Mr. Guerra and Mr. Alvarado both had guns and had confronted the victim, yet none of them saw who shot the victim." According to Guerra, the real import of the other acts evidence was, therefore, to imply that because Guerra had acted violently on other occasions, he must have acted violently on this occasion as well. This argument fails because the underlying assumption is incorrect.

{¶22} Although Jonathan Negron, Rolando Ramos, and Gabriel Fernandez each testified that they could not see who shot Velez from their vantage points, that was not the sum and substance of their testimony. They also testified that they saw the guns that Guerra and Alvarado held, described them as black and chrome, respectively, and identified the black 9mm gun as the weapon in Guerra's hand. The State's expert witnesses established that Velez was killed by a single bullet from a 9mm HiPoint semiautomatic weapon, and the police testified that they found a corresponding magazine in the alley behind Southerner's. Alvarado testified that Guerra used

a black 9mm gun during the entire incident, that they fled through the alley behind the bar, and that it was Guerra who killed Velez.

{¶23} In light of this testimony, we cannot conclude that the trial court abused its discretion by determining that the probative value of the other acts evidence in demonstrating Guerra's motive was not outweighed by the risk of prejudice to him. Guerra's third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE GUILTY VERDICT FOR AGGRAVATED MURDER IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶24} Guerra's second assignment of error is that the determination that he acted with prior calculation and design is against the manifest weight of the evidence. With respect to this assignment of error, this Court notes that Guerra has not framed a manifest weight argument with references to the record as required by App.R. 16(A)(7) and Loc.R. 7(A)(7). Instead, the substance of Guerra's manifest weight argument is identical to the substance of his first assignment of error.

{¶25} Sufficiency and weight of the evidence, however, are "both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. With respect to the weight of the evidence, the Ohio Supreme Court has explained:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Id.* at 387, quoting Black's Law Dictionary (6 Ed.1990) 1594. When an appellate court reverses a conviction as against the manifest weight of the evidence, it views the record from the perspective of the finder of fact without affording deference to the State and disagrees with the fact finder's resolution of conflicting evidence. *See id.* Consequently, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st. Dist.1983).

{¶26} Despite the limitations of Guerra's manifest weight argument, this Court has reviewed the entire record and weighed the evidence and has concluded that the evidence does not lead to the conclusion that the jury lost its way when it determined that Guerra acted with prior calculation and design. Cruz, Ramos, and Fernandez each testified regarding the increasing hostility between the Cruz brothers and Guerra, describing incidents in which Guerra implicitly threatened them with his weapon and with hand gestures. Each also testified that Velez was present with the group on prior occasions that culminated in confrontations with Guerra. Alvarado described Guerra's plan to find and shoot Cruz, and his testimony about the manner in which Velez's death occurred is consistent with the accounts of Cruz and his companions. Although police never located the murder weapon, forensic evidence further confirmed Alvarado's version of the events in question by identifying the make and caliber of the gun that killed Velez.

**{¶27}** The evidence of the surrounding events and the relationships between the individuals involved in this case is consistent with Alvarado's testimony that Guerra killed Moises Velez in the course of executing his plan to kill Noel Cruz. As explained above, Guerra's prior calculation and design with respect to Cruz transferred to Velez, the actual victim. *Sowell*, 39 Ohio St.3d 322 at paragraph two of the syllabus, following *Solomon*, 66 Ohio St.2d 214 at paragraph one of the syllabus. Guerra's conviction is not against the manifest weight of the evidence, and his second assignment of error is overruled.

### III.

**{¶28}** Guerra's assignments of error are overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ROBERT A. GAFFNEY, JR., Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.