[Cite as *State v. Baskerville*, 2017-Ohio-4050.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.      28148 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEANDRE J. BASKERVILLE | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.     CR 2015 10 3270 |

DECISION AND JOURNAL ENTRY

Dated: May 31, 2017

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Deandre Baskerville, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On an evening in August 2015, Mr. Baskerville went to the mall with his cousin. While there, he saw an acquaintance, the victim in this matter, and approached him. According to Mr. Baskerville, the victim owed him money and he wanted to speak with the victim regarding their business arrangement. There is no dispute that, while the two spoke, an argument developed, and the victim became increasingly upset. Eventually, the two walked out of the mall together as they continued to argue. The argument ended when Mr. Baskerville removed a knife from his pocket and stabbed the victim once in the side of the neck. The victim then stumbled back into the mall where he died shortly thereafter. According to Mr. Baskerville, he stabbed the victim in self-defense. He admitted, however, that he ran from the scene, disposed of his knife,

sanitized his car, burned the clothes he was wearing, and left Ohio. The police apprehended Mr. Baskerville in West Virginia the following month.

{¶3} A grand jury indicted Mr. Baskerville on two counts of murder and one count of aggravated murder, felonious assault, and carrying a concealed weapon. The matter proceeded to a jury trial, at the conclusion of which the jury found Mr. Baskerville not guilty of aggravated murder, but guilty of his remaining charges. The trial court sentenced him to fifteen years to life in prison.

{¶4} Mr. Baskerville now appeals from his convictions and raises eight assignments of error for our review. For ease of analysis, we rearrange and consolidate several of the assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED IN ALLOWING INTRODUCTION OF EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS TO SHOW MR. BASKERVILLE'S CHARACTER IN VIOLATION OF THE RULES OF EVIDENCE DENYING MR. BASKERVILLE DUE PROCESS AND EQUAL PROTECTION OF LAW UNDER BOTH THE [U.S.] CONSTITUTION AND THE OHIO CONSTITUTION.

{¶5} In his first assignment of error, Mr. Baskerville argues that the trial court abused its discretion when it allowed the State to introduce evidence about his prior convictions. He argues that the evidence was irrelevant, prejudicial, and violated Evid.R. 404(B). Upon review, Mr. Baskerville has not shown that the trial court abused its discretion.

{¶6} Under Evid.R. 404(B), other acts evidence "is not admissible to prove that the defendant acted in conformity with the character demonstrated by the other acts, but other acts evidence may be admissible for different purposes." *State v. Guerra*, 9th Dist. Lorain No. 12CA010188, 2013-Ohio-5367, ¶ 17. The Rule "contains a non-exhaustive list of exceptions

under which other acts evidence may be admitted for a purpose other than to show propensity." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 41. It specifies, for example, that other acts evidence may be admitted for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

{¶7} The admission of other acts evidence is a three-step process:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20. "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus.

{¶8} Mr. Baskerville acknowledges that the State did not introduce evidence about his prior convictions in its case-in-chief. Rather, he disclosed his prior convictions when he took the stand in his own defense. The State then inquired about the details of his prior convictions when cross-examining him. Mr. Baskerville argues that there was no reason for the State to "rehash and repeat" his convictions because he had already disclosed them. He also asserts that the circumstances underlying his convictions were irrelevant to his charges and that their introduction only served to portray him as a violent person.

{¶9} Mr. Baskerville's argument essentially consists of two prongs. Under the first prong, the issue is whether the State could ask Mr. Baskerville about his prior convictions on cross-examination. Under the second prong, the issue is whether the State could ask Mr. Baskerville about the facts underlying his prior convictions. Because Mr. Baskerville testified about his prior convictions during direct examination, he "open[ed] the door for the [S]tate to question him about them on cross-examination." *State v. Williams*, 38 Ohio St.3d 346, 350 (1988). Thus, the State was free to inquire about his prior convictions. Mr. Baskerville's testimony on direct examination, however, did not address the details of his prior convictions. As such, Evid.R. 404(B) still applied when the State went beyond the fact of his convictions and sought to question him about their underlying circumstances. *See id.*

{¶10} On direct examination, Mr. Baskerville conceded that he had a prior record consisting of a "[m]ajority of drug charges, well, marijuana charges, * * * and * * * a gun charge of basically a weapons under disability * * *." He stated that he had six or seven felonies and had "been to the penitentiary twice." It was his testimony that he had "copped out" to all of his prior felonies because he was guilty of them. Accordingly, he offered testimony that, when he was actually guilty of a crime, he conceded his wrongdoing and accepted his punishment.

{¶11} On cross-examination, the State asked Mr. Baskerville whether his prior weapons charge prohibited him from carrying a gun, and he agreed that was the case. Over objection, the State then asked him why he had been carrying a gun, and Mr. Baskerville responded:

> Actually to protect myself. I was faced with a situation where I got into it with a group [of] men at a bar. I didn't know these guys from Adam and Eve, and word around town they were going to do something to me, and these are the type of guys that like to use guns, and, I mean, they was just for my protection. I had got stopped with the gun, actually. I was going through a sobriety checkpoint and got check with the guns and money and weed.

Following his answer, the State asked Mr. Baskerville whether he had started carrying a knife after being caught with a gun. Mr. Baskerville responded that he did not carry a knife on a daily basis, but did carry one, at times, for protection. He agreed that the "street business" he conducted was dangerous and, at times, necessitated that he carry one. The State then turned to the sanctions Mr. Baskerville had received for his prior crimes.

{¶12} The State asked Mr. Baskerville whether all his prior convictions had been low-level felonies, and he agreed that was true. The following exchange then took place:

[PROSECUTOR:] And they all probably got probation?

[MR. BASKERVILLE:] I had to go to prison.

[PROSECUTOR:] Eventually?

[MR. BASKERVILLE:] I mean, for a couple of them, yes.

[PROSECUTOR:] Well, let's ask. Originally when you started getting your convictions you got probation, right?

[MR. BASKERVILLE:] For one, yeah, the first time I got probation, but after that I went to prison.

[PROSECUTOR:] Because you violated probation?

[MR. BASKERVILLE:] Okay, yes.

[PROSECUTOR:] So it wasn't like you were facing prison when you pled to those cases? You only ended up going to prison because you pled for probation, and then you end up violating probation and then going to prison?

[DEFENSE COUNSEL:] Objection.

[THE COURT:] Overruled.

[MR. BASKERVILLE:] But I was still facing prison either way. If I would have took it to trial and lost, I would have been going to prison.

Mr. Baskerville then agreed that the stakes in his immediate case were higher than in his previous cases due to the potential for a much longer prison sentence.

{¶13} Upon review, this Court cannot conclude that the trial court abused its discretion when it allowed the State to ask Mr. Baskerville about the circumstances of his weapons charge and the sanctions he faced for his prior convictions. Mr. Baskerville was charged with stabbing the victim and claimed that he acted in self-defense. His testimony that he carried weapons to protect himself from the dangers he faced as a result of his illegal activities bore upon his intent to carry his knife as a weapon and his willingness to use it in a confrontation. As such, that testimony was relevant and offered for a legitimate purpose. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 20, citing Evid.R. 401 and 404(B). Moreover, even if that testimony had minimal probative value, Mr. Baskerville has not explained how its admission unfairly prejudiced him. *See Williams* at ¶ 20. His testimony that he carried a weapon to defend himself was consistent with the self-defense theory that he presented at trial. Any error in its admission, therefore, did not result in material prejudice to him. *See State v. Ellis*, 9th Dist. Summit No. 27013, 2014-Ohio-4186, ¶ 28.

{¶14} As to the State's questions about the sanctions Mr. Baskerville faced for his prior convictions, Mr. Baskerville has not explained how those questions sought to elicit other acts testimony. *See* App.R. 16(A)(7). Assuming he takes issue with the fact that the State asked him about having violated probation, the record reflects that the State made its inquiries in response to the testimony he gave on direct examination. On direct examination, Mr. Baskerville testified that he had "copped out" to all of his previous felonies even though he had to go to prison on two occasions. His testimony implied that, when guilty, he would admit his wrongdoings and accept the consequences, even if it meant he would go to prison. The testimony the State was able to elicit on cross-examination showed that all of his previous charges were probation-eligible and that the only reason he went to prison was because he later violated the terms of his probation.

As such, the State's line of questioning was offered in direct response to the implication that Mr. Baskerville created on direct examination. That is, it tended to detract from the implication that, had he truly been guilty here, Mr. Baskerville would have entered a plea in spite of the potential for a prison sentence. Under these circumstances, there was no error in the admission of that testimony. *See State v. Greer*, 39 Ohio St.3d 236, 242-243 (1988). Because Mr. Baskerville has not shown that the trial court abused its discretion in the admission of the evidence at issue here, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 7

MR. BASKERVILLE'S MURDER AND FELONIOUS ASSAULT CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AS A RESULT HIS RIGHTS UNDER THE 14TH AMENDMENT TO THE [U.S.] CONSTITUTION AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION WERE VIOLATED REQUIRING HIS CONVICTION ON THOSE COUNTS BE VACATED.

{¶15} In his seventh assignment of error, Mr. Baskerville argues that his convictions for murder and felonious assault are against the manifest weight of the evidence. Specifically, he argues that the greater weight of the evidence presented at trial demonstrated that he acted in self-defense. This Court disagrees.

{¶16} When a defendant argues that his conviction is against the weight of the evidence, this court must review all of the evidence before the trial court.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the

appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶17} Relevant to this appeal, a person commits murder when he either "purposely cause[s] the death of another" or "cause[s] the death of another as a proximate result of [his] committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(A), (B). A person commits felonious assault when he either knowingly "[c]ause[s] serious physical harm to another" or knowingly "[c]ause[s] * * * physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1), (2). There is no dispute that Mr. Baskerville's felonious assault charge served as the predicate offense for his felony murder charge.

{¶18} "A defendant has the burden of establishing the affirmative defense of self-defense by a preponderance of the evidence." *State v. Gates*, 9th Dist. Summit No. 24941, 2010-Ohio-2994, ¶ 7. Where a defendant has used deadly force, he must prove that

> "(1) [he] was not at fault in creating the violent situation, (2) [he] had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that [he] did not violate any duty to retreat or avoid the danger."

*State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326 (1997); R.C. 2901.05. "The 'elements of self-defense are cumulative.'" *State v. Osborne*, 9th Dist. Summit No. 27563, 2016-Ohio-282, ¶ 6, quoting *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶19} The victim's fiancée testified that, the night this incident occurred, she and the victim were at the mall with their three-year-old son. They went to several stores and were about

to walk into another when Mr. Baskerville called out to the victim. The victim's fiancée was familiar with Mr. Baskerville because he had engaged in illegal dealings with both her brother and the victim. She testified that the victim stopped to speak with Mr. Baskerville and, as she continued into the store with her son, she heard Mr. Baskerville say "[s]omething pertaining to money." She testified that the two men began to argue while she was inside the store and, at some point, the victim called her over to ask a question. Specifically, he asked whether Mr. Baskerville had told her about his (the victim's) infidelity. Once she confirmed that Mr. Baskerville had done so, she returned to the store, and the two men continued to argue. She testified that she heard the victim say, "I don't have your money," and later heard one of the men say "let's take this outside * * *." She then saw both men begin walking in the same direction, so she left the store with her son to follow them.

{¶20} As the two men walked a distance in front of the victim's fiancée, she could hear that they were still arguing. She testified that her fiancé turned around twice and cautioned her "to take [their] son and get back." Accordingly, she remained inside the mall with her son as the two men walked outside and stood on the sidewalk in front of the mall's glass entryway. She continued to watch as the victim stood with his back to her and Mr. Baskerville stood in front of him. The victim's fiancée testified that the two men were "steady arguing" when Mr. Baskerville jumped up, punched the victim in the neck, and ran. The victim then ran back inside while holding his neck. His fiancée testified that he eventually stopped running and lost consciousness next to a raised platform in the center of one of the mall's aisles. She confirmed that a knife the police found on the platform resembled a pocket knife that the victim carried regularly. There was testimony that the knife's blade was out when the police found it and that DNA found on the knife's blade and handle was consistent with the victim's.

{¶21} Dr. Dorothy Dean, a former deputy medical examiner for Summit County, performed the victim's autopsy. She testified that the victim sustained a stab wound to the left side of his neck from a sharp instrument consistent with a knife. The instrument penetrated three inches "into his neck from left to right" and cut a large number of muscles, his jugular vein, and his trachea. Dr. Dean testified that the victim died from massive blood loss due to the stab wound he sustained. She further testified that, during her examination, she did not note any additional, relevant injuries to the victim that might be consistent with a struggle or defensive wounds.

{¶22} Mr. Baskerville's father testified that, about half an hour after he arrived home on the night of the stabbing, he received a call from Mr. Baskerville. He testified that Mr. Baskerville routinely drove a red SUV and that the call was about the car. Specifically, Mr. Baskerville called to say that he had parked the car behind his father's house with the keys inside and would call back later. At that point, Mr. Baskerville's father had no knowledge of the stabbing. Within the next 15 minutes, however, people began to contact him and he received information from them. Mr. Baskerville then called him again later that evening. During the second phone call, Mr. Baskerville told his father that he had gotten into a confrontation at the mall with a man who owed him money. He stated that the man became irate and eventually suggested they "take this outside" even though he (Mr. Baskerville) told the man that "[i]t ain't even got to go this far." He told his father that the man was very aggressive, shouting expletives and stating that he was not afraid of Mr. Baskerville. He told his father, after they went outside, he "thought that [the man] was going to do something to [him]," so he stabbed him in the neck and ran. Although Mr. Baskerville's father encouraged him to turn himself in, Mr. Baskerville did not do so. Meanwhile, his father contacted the police to report that Mr. Baskerville's car was

parked at his house. There was testimony that the car had been wiped clean, but that forensic scientists were still able to find DNA on swabs taken from its interior. There was testimony that the DNA they found was consistent with the victim's.

{¶23} Detective James Pasheilich testified that he secured an arrest warrant for Mr. Baskerville within a few hours of the stabbing, but that he evaded capture for more than a month. The detective testified that his department had to ask the Northeastern Fugitive Task Force to aid in Mr. Baskerville's apprehension. He testified that the task force eventually found Mr. Baskerville in West Virginia and secured his return to Ohio.

{¶24} Mr. Baskerville testified in his own defense and also presented the testimony of a friend who worked at a kiosk in the mall where the stabbing occurred. The friend testified that he was working the evening of the stabbing and Mr. Baskerville came to the kiosk to ask questions about a cell phone repair. While the friend was helping other customers, he saw Mr. Baskerville walk over to a nearby shoe store and begin talking to a man he did not recognize. As their conversation continued, the friend testified that the other man (the victim) began talking louder and acting "a little upset" while Mr. Baskerville remained quiet and "kind of nonchalant." He testified that, at one point, he heard Mr. Baskerville tell the other man, "it don't have to be like this; he don't have to get loud because it * * * wasn't that serious." The friend last observed the two men walk away together while a woman and a small child trailed behind them.

{¶25} Mr. Baskerville testified that he and his cousin went to the mall that evening so that he could stop at his friend's kiosk regarding his cell phone. While there, he happened to see the victim and went to speak to him. He testified that he had not seen the victim for several months and, before that, had fronted the victim drugs with the understanding that the victim would sell them and return with money. Mr. Baskerville stated that the victim did not respond

when he first called over to him, so he tried again. He testified that, once he got the victim's attention and asked about their unfinished business, the victim immediately became upset. Mr. Baskerville claimed that he tried to get the victim to calm down because he only wanted to know why the victim had failed to follow through with their arrangement. He testified, however, that the victim told him, "mother f***er, I don't owe you s***," and accused Mr. Baskerville of recently trying to find him. As Mr. Baskerville continued to ask the victim about their deal amidst the victim's expletive-laced responses, the victim said: "If you think that, we going to settle this s*** outside. Let's go outside."

{¶26} According to Mr. Baskerville, after the victim suggested they go outside, he felt his phone vibrate and realized it was time to leave and go pick up his kids. He then told his cousin to meet him at the car and began walking outside. Although he walked alongside the victim, Mr. Baskerville testified that it was his intention to leave and "kind of defuse the situation." Nevertheless, he admitted that he and the victim ended up outside, standing face-to-face. He acknowledged there was "tension in the air" as the two faced each other. He testified that, as they argued, the victim stated: "[B]****, I don't owe you s***. I leave you right where you stand." According to Mr. Baskerville, he took the latter statement as a threat and, shortly after the victim uttered it, the victim went to reach to his side or to his pocket. At that moment, Mr. Baskerville felt that if he did not "do something right [then] to stop what[ was] about to happen, something[] [would] happen to [him]." He, therefore, quickly "pop[ped] [his] knife out" and struck the victim. He testified that he did not know where he struck the victim and did not intend to kill him. He stated that, when he backed up, he saw something in the victim's hand before turning to run. Mr. Baskerville confirmed that he was carrying a knife in his pocket that

day, but claimed that he only carried it as a protective measure. He also testified that he knew the victim had a reputation for being "a snake and a bully" and for carrying a weapon.

{¶27} Mr. Baskerville admitted that, after he stabbed the victim, he took steps to hide evidence from the police. Specifically, he admitted that he took his car to his father's house, wiped it down with cleaning solution, burned the clothes he was wearing, and left town. He further admitted that he disposed of his knife, which he later termed "the murder weapon," somewhere between Akron and West Virginia. According to Mr. Baskerville, he went to West Virginia to try to earn money for his defense. He acknowledged, however, that he did not learn about the intricacies of self-defense until he was apprehended and spoke to another inmate at the jail. He acknowledged that the inmate told him how he had "beat a body case" (i.e., a murder case) by tweaking his story to reflect that he had acted in self-defense. Mr. Baskerville conceded that, at that point, he was deciding whether to lie about what had happened. He admitted saying that his decision to lie would depend upon the quality of the evidence the police had against him.

{¶28} Mr. Baskerville argues that his convictions are against the manifest weight of the evidence because (1) he was not at fault in creating the violent situation that erupted here, (2) he possessed a bona fide belief that he was in imminent harm, and (3) before he acted, he had attempted to leave. He asserts that there can be "no doubt" the victim pulled a knife on him, as the police found the knife next to the victim's body. Accordingly, he argues that the jury lost its way by not concluding that he acted in self-defense.

{¶29} Having reviewed the record, we cannot conclude that the jury lost its way when it rejected Mr. Baskerville's claim of self-defense. A person is only entitled to use deadly force if his "'only means of escape was the use of force'" such that he did not violate a duty to retreat or avoid the danger. *Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, at ¶ 36, quoting *Thomas*, 77 Ohio

St.3d at 326. Even assuming that Mr. Baskerville proved he was not at fault and was in imminent danger when he struck the victim, the jury reasonably could have concluded that he violated his duty to retreat. *See Osborne*, 2016-Ohio-282, at ¶ 6, quoting *Jackson*, 22 Ohio St.3d at 284 (elements of self-defense cumulative). The jury heard testimony that Mr. Baskerville and the victim began their disagreement in the mall before walking outside together and arguing face-to-face. They also heard testimony that the victim, who was angry, swearing, and allegedly had a reputation for violence, had specifically suggested that he and Mr. Baskerville settle their argument outside. The jury reasonably could have concluded that, by not remaining in the mall or otherwise retreating from the victim, Mr. Baskerville violated a duty to retreat or avoid danger. *See State v. Williams*, 9th Dist. Summit No. 22710, 2006-Ohio-1031, ¶ 17. Although Mr. Baskerville claimed that he was walking outside for the purpose of leaving the mall, the jury was free to reject his testimony. *See Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("[I]n reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness.").

{¶30} The State presented evidence that Mr. Baskerville repeatedly pressed the victim about drug money he allegedly owed, engaged in a face-to-face argument with him outside the mall, and stabbed him in the neck with a knife that he was carrying in his pocket. They also heard testimony that, following the stabbing, Mr. Baskerville took significant measures to destroy evidence related to the crime, fled the state, and avoided apprehension for more than a month. *See State v. Clayton*, 9th Dist. Summit No. 27352, 2015-Ohio-498, ¶ 17 (noting flight can be evidence of consciousness of guilt). Finally, they heard testimony that Mr. Baskerville learned about self-defense in jail and specifically said he would decide whether to tell the truth about these events once he learned what evidence the State had against him. Based upon all the

evidence in the record, this Court cannot conclude that this is the exceptional case where the jury lost its way in convicting Mr. Baskerville. *See Otten*, 33 Ohio App.3d at 340. As such, his seventh assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE INFLAMMATORY, CUMULATIVE AND GRUESOME PHOTOGRAPHS IN VIOLATION OF MR. BASKERVILLE'S RIGHTS TO A FAIR TRIAL AS PROTECTED BY THE 5TH, 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

{¶31} In his fourth assignment of error, Mr. Baskerville argues that the trial court erred when it admitted cumulative and gruesome photographs into evidence. Mr. Baskerville acknowledges that he did not object to any of the photographs that are the subject of his argument, so he asks this Court to find plain error in their admission. Upon review, this Court rejects his argument.

{¶32} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The doctrine of plain error requires that there must be: (1) a deviation from a legal rule; (2) that is an obvious defect in the trial; and (3) that affects the appellant's substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). An error affects the appellant's substantial rights if it affected the outcome of the trial. *Id.* "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶33} "[T]he mere fact that a photograph is gruesome or horrendous is not sufficient to render it *per se* inadmissible." *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). "'Autopsy photographs are generally admissible to help the jury appreciate the nature of the crimes, to

illustrate the coroner's or other witnesses' testimony by portraying the wounds, to help prove the defendant's intent, and to show the lack of accident or mistake.'" *State v. Buck*, 9th Dist. Summit No. 27597, 2017-Ohio-273, ¶ 22, quoting *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 142. Likewise, a trial court may admit gruesome photographs if they give "the jury an 'appreciation of the nature and circumstances of the crimes.'" *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 26, quoting *State v. Evans*, 63 Ohio St.3d 231, 251 (1992).

{¶34} The record reflects that the State introduced photographs that were taken at the mall after the stabbing as well as several autopsy photographs. The court admitted a total of 31 mall photographs, all of which were taken after the victim's body had been removed. One of the photographs simply depicts the sign for the mall, so it is clearly not gruesome in nature. The remaining photographs show the area where Mr. Baskerville and the victim were standing outside and the path the victim took back through the mall to the place where he ultimately lost consciousness and died. The vast majority of the photographs show little to no blood on the ground, but several depict a large amount of blood in the area where the victim ultimately collapsed. Mr. Baskerville argues that the court erred by admitting the mall photographs because they were simply used "for shock value to inflame the jury * * *." Yet, "'photos of blood stains * * * do not have a shock value equivalent to a photograph of a corpse. The term 'gruesome' in the context of photographic evidence should, in most cases, be limited to depictions of actual bodies or body parts.'" *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4125, ¶ 141, quoting *State v. DePew*, 38 Ohio St.3d 275, 281 (1988). None of the mall photographs depict bodies or body parts. Moreover, Mr. Baskerville has not shown that they were needlessly cumulative, as they were taken from different locations and angles. Because Mr. Baskerville has not shown that the

mall photographs were either gruesome or needlessly cumulative, this Court will not conclude that the trial court erred by admitting them. *See DePew* at 281.

{¶35} As to the autopsy photographs, the record reflects that there were eight in number and that each photograph had a different purpose. The first photograph depicted the victim's entire body, and Dr. Dean used it to show old scars that the victim had, injuries he received strictly from medical intervention, and bags that he initially had on his hands to preserve potential evidence. The second picture depicted the victim's face, washed clean, and Dr. Dean used it for identification purposes, as well as to show the lack of any injury. Five of the other pictures, taken from different angles, depicted the backs and fronts of the victim's hands. Dr. Dean used those pictures to show that the victim had a significant amount of blood on his hands, but no injuries that would suggest either a struggle or a defensive wound. Finally, the last picture depicted the stab wound to the victim's neck, and Dr. Dean used it in conjunction with her testimony, describing the victim's fatal injury.

{¶36} Although Mr. Baskerville ultimately admitted having stabbed the victim in his case-in-chief, it was still the State's burden to prove the elements of murder and felonious assault. *See State v. Gay*, 9th Dist. Summit No. 26487, 2013-Ohio-4169, ¶ 40-43. The eight autopsy photographs helped "'illustrate the [medical examiner's] * * * testimony by portraying the wounds, [helped] prove the defendant's intent, and [showed] the lack of accident or mistake.'" *Buck*, 2017-Ohio-273, at ¶ 22, quoting *Costell*, 2016-Ohio-3386, at ¶ 142. They were, therefore, useful to the jury. *See State v. Likosar*, 9th Dist. Medina No. 03CA0063-M, 2004-Ohio-114, ¶ 22, quoting *State v. Woodards*, 6 Ohio St.2d 14, 25 (1966). Moreover, they were not duplicative, as they depicted different areas of the victim's body. *See State v. Feaster*, 9th Dist. Summit No. 24367, 2009-Ohio-2558, ¶ 24-27. Upon review, Mr. Baskerville has not

shown that the trial court committed plain error when it admitted the photographs. His fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ERRED IN ALLOWING PROSECUTOR TO CONTINUALLY REFER TO AN INADMISSIBLE VIDEO AND TO USE THE VIDEO AND INFORMATION THEREIN FOR IMPEACHMENT OF THE STATE'S OWN WITNESS.

**{¶37}** In his fifth assignment of error, Mr. Baskerville argues that the trial court erred when it permitted the State to impeach its own witness. Because Mr. Baskerville has not explained how he was prejudiced by the court's error, if any, this Court rejects his argument.

**{¶38}** In its case-in-chief, the State called as a witness a 14-year-old who was at the mall with a friend on the night of the stabbing. The juvenile testified that he and his friend heard Mr. Baskerville and the victim arguing, so they decided to follow them in hopes of seeing further argument or a fight. They walked outside behind the men and passed by them when the men stopped. The juvenile testified that he could not recall exactly what the men were saying, but it involved money. Although the prosecutor attempted to employ the procedure for refreshing a witness' recollection, the juvenile would not respond affirmatively when the prosecutor asked whether reviewing his prior statement would aid his memory. The prosecutor then asked the juvenile whether he remembered hearing one of the men make a statement about a gun, and the juvenile stated that he did not. At that point, the prosecutor sought to introduce the statement that the juvenile gave to the police, and defense counsel objected on the basis that the prosecutor was attempting to impeach his own witness. Following an extended side bar discussion, the prosecutor once again attempted to use the procedure for refreshing a witness' recollection. The juvenile then agreed that it would be helpful to review his prior statement and did so before

questioning resumed. The juvenile ultimately agreed that he had heard either Mr. Baskerville or the victim say something about a gun. He did not recall what exactly was said or by whom.

{¶39} Mr. Baskerville argues that the trial court erred when it allowed the juvenile to testify that he heard a statement about a gun. He argues that the juvenile's testimony was improper because the State essentially had to impeach him to elicit it. Yet, even assuming the procedure here was flawed, Mr. Baskerville has not explained how that error affected his substantial rights. *See* Crim.R. 52(A). The victim died as a result of a stabbing, not a shooting, and there was no suggestion at trial that either Mr. Baskerville or the victim possessed a gun at the time of this incident. Additionally, the juvenile who testified readily admitted that he could not recall what was said about a gun or which man even uttered that statement. Under these facts and circumstances, Mr. Baskerville has not shown that he suffered any prejudice as a result of the trial court's error, if any. *See id.* As such, his fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE PROSECUTOR'S CONDUCT THROUGHOUT THE TRIAL ROSE TO THE LEVEL OF PROSECUTORIAL MISCONDUCT AND DEPRIVED MR. BASKERVILLE OF HIS RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL IN VIOLATION OF HIS 5TH, 6TH, AND 14TH AMENDMENT RIGHTS UNDER THE [U.S.] CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

{¶40} In his third assignment of error, Mr. Baskerville argues that prosecutorial misconduct deprived him of a fair trial. This Court disagrees.

{¶41} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No.

03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *State v. Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶42} Mr. Baskerville alleges that the prosecutor engaged in misconduct by interjecting, at multiple points throughout the trial, otherwise irrelevant "references to blood and gore." He asserts that the prosecutor unnecessarily drew attention to the victim's substantial blood loss through testimony about his injuries, photographs of his blood and autopsy, and the crime scene video that was recorded at the mall. He further argues that the prosecutor engaged in misconduct when he impeached his own witness.

{¶43} With regard to the prosecutor's "references to blood and gore," Mr. Baskerville has not cited this Court any particular instance where he claims that the prosecutor engaged in misconduct. Rather, he argues that, viewing the trial as a whole, the emphasis the prosecutor placed on the gruesome nature of the victim's injury was egregious. It is his contention that the State did not need to elicit certain testimony or show certain evidence to prove its case. It is not this Court's role, however, to direct the State how best to present its case so as to satisfy its evidentiary burden. While a prosecutor must not stray from the confines of the law, he "'is at liberty to prosecute with earnestness and vigor, striking hard blows * * *.'" *State v. Frazier*, 73 Ohio St.3d 323, 341 (1995), quoting *Smith* at 14. In examining a claim of prosecutorial misconduct, this Court must focus on whether the prosecutor engaged in any particular improper conduct and, if so, whether that conduct prejudiced the defense. *See Smith* at 14. This Court has

already determined that there was no error in the admission of the photographs that the State introduced, depicting the scene at the mall and the victim's autopsy. Further, even if the prosecutor somehow acted improperly by making superfluous references to the amount of blood the victim lost, it is unclear how those references prejudiced Mr. Baskerville. *See id.* Regardless of how much blood the victim lost, the evidence showed that he only sustained a single stab wound, and Mr. Baskerville did not dispute that he stabbed the victim. The only issue was whether the stabbing amounted to murder or self-defense. Mr. Baskerville has not shown that, had the prosecutor shown the jury fewer graphic images or asked fewer questions about the graphic nature of the scene, the jury would have reached a different result here. Thus, this Court rejects his argument to the contrary.

{¶44} This Court likewise rejects Mr. Baskerville's argument that he was deprived of a fair trial when the prosecutor impeached his own witness. As discussed in Mr. Baskerville's fifth assignment of error, Mr. Baskerville has not shown that he suffered prejudice as a result of the admission of the 14-year-old witness' testimony. Absent a showing of prejudice, he cannot succeed on his prosecutorial misconduct argument. *See id.* Thus, his third assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 2**

THE TRIAL COURT ERRED WHEN IT CHARGED THE JURY WITH A CONFUSING AND MISLEADING SELF-DEFENSE INSTRUCTION.

**ASSIGNMENT OF ERROR NO. 6**

THE TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY ON THE LESSER INCLUDED OFFENSES OF INVOLUNTARY MANSLAUGHTER, VOLUNTARY MANSLAUGHTER AND AGGRAVATED ASSAULT AS REQUIRED UNDER THE LAW.

**{¶45}** In his second and sixth assignments of error, Mr. Baskerville argues that the court erred in it instructions to the jury. Specifically, he argues that the court (1) gave the jury a misleading self-defense instruction, and (2) should have instructed the jury on certain lesser-included offenses. For the reasons that follow, this Court rejects Mr. Baskerville's arguments.

**{¶46}** "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46. "[A] trial court must instruct the jury on a lesser included offense if 'the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense.'" *State v. Lockhart*, 9th Dist. Summit No. 28053, 2017-Ohio-914, ¶ 14, quoting *State v. Carter*, 89 Ohio St.3d 593, 600 (2000). "In deciding whether to instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant." *State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, ¶ 8.

**{¶47}** First, Mr. Baskerville argues that the trial court erred when it instructed the jury on self-defense because it failed to define what it means to be "at fault in creating [the] situation giving rise to the altercation * * *." He argues that, without further elaboration, the jury was free to conclude that, by first approaching the victim and starting their verbal discussion, he was at fault in creating this situation. Noting his failure to object, he argues that it was plain error for the trial court to not further explain to the jury the concept of fault.

**{¶48}** This Court need not determine whether the trial court erred in its "at fault" instruction. That is because, even assuming it did, Mr. Baskerville cannot show that the inadequate "at fault" instruction caused the jury to reject his claim of self-defense. *See Barnes*, 94 Ohio St.3d at 27 (plain error must affect the outcome of the trial). As previously noted, a person is only entitled to use deadly force if his "'only means of escape was the use of force'" such that he did not violate a duty to retreat or avoid the danger. *Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, at ¶ 36, quoting *Thomas*, 77 Ohio St.3d at 326. The jury here reasonably could have concluded that, by not remaining in the mall or otherwise retreating from the victim, Mr. Baskerville violated a duty to retreat or avoid the danger. Thus, he has not shown that he would have prevailed on his claim of self-defense, but for the court's at fault instruction. *See Barnes* at 27. His second assignment of error is overruled.

**{¶49}** Second, Mr. Baskerville argues that the trial court erred by not instructing the jury on the lesser-included offenses of involuntary manslaughter, voluntary manslaughter, and aggravated assault. With regard to voluntary manslaughter and aggravated assault, both offenses require a person to have acted "while under the influence of sudden passion or in a sudden fit of rage * * *." R.C. 2903.03(A); R.C. 2903.12(A). The trial court specifically denied Mr. Baskerville's request for an instruction on voluntary manslaughter because there was no evidence that he met the foregoing requirement. Mr. Baskerville never claimed to be angry or motivated by rage. Indeed, it was his testimony that he remained calm and tried to defuse the situation with the victim. He testified that he only stabbed the victim because he felt that he was in imminent harm. Moreover, the friend whose testimony he presented in his defense described him as quiet and "kind of nonchalant" during his exchange with the victim. Even viewing the evidence in a light most favorable to Mr. Baskerville, *see Meadows*, 2013-Ohio-4271, at ¶ 8,

there was no evidence that he stabbed the victim "while under the influence of sudden passion or in a sudden fit of rage." R.C. 2903.03(A); R.C. 2903.12(A). Thus, the evidence did not reasonably support a conviction on the offenses of voluntary manslaughter and aggravated assault, and the trial court did not err by refusing to instruct on those offenses. *See Lockhart*, 2017-Ohio-914, at ¶ 14, quoting *Carter*, 89 Ohio St.3d at 600.

{¶50} To the extent Mr. Baskerville argues that the trial court erred by not instructing the jury on involuntary manslaughter, the record reflects that he waived that instruction. *See Lockhart*, 2017-Ohio-914, at ¶ 14 ("A defendant * * * retains the right to waive such instructions, including through counsel."). Mr. Baskerville's counsel specifically informed the court that he was not requesting an involuntary manslaughter instruction because, as a matter of law, Mr. Baskerville was not entitled to it. Even if defense counsel was incorrect in his legal assessment, "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Lester v. Leuck*, 142 Ohio St. 91 (1943), paragraph one of the syllabus. Upon review, Mr. Baskerville's sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 8

> MR. BASKERVILLE'S RIGHTS PURSUANT TO THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶51} In his eighth assignment of error, Mr. Baskerville argues that he received ineffective assistance of counsel. His argument consists of the following paragraph:

> If this Court were to determine that Mr. Baskerville waived any arguments because of his counsel's failure to object, he would argue that then evidences ineffective assistance of counsel and ask the Court to rule as such. Failing to object to an issue affecting the outcome of the case is not trial strategy. Mr. Baskerville claims that this error prejudiced his rights to a fair trial and would request reversal of any convictions therein.

Mr. Baskerville has not, therefore, pointed to any particular instance of ineffective assistance of counsel in setting forth his argument.

{¶52} This Court has not concluded that Mr. Baskerville waived any of his arguments as a result of his counsel's failure to object. By presenting this Court with a generalized ineffective assistance of counsel argument, Mr. Baskerville has hampered this Court's review. This Court will not construct a more precise argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *State v. Watson*, 9th Dist. Summit No. 24232, 2009-Ohio-330, ¶ 5, citing App.R. 16(A)(7). Because Mr. Baskerville has not pointed this Court to any particular alleged instance of ineffective assistance of counsel, this Court rejects his argument. Mr. Baskerville's eighth assignment of error is overruled.

III.

{¶53} Mr. Baskerville's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

NATALIE M. NIESE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.